## Case No. 13,790.

TAYLOR et al. v. DEBLOIS et al.

[4 Mason, 131.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1825.

ADMINISTRATOR — BECOMING GUARDIAN — SUIT ON BOND—SURETIES.

1. An administratrix, after a decree of the probate court ascertaining the distributive shares of the intestate's estate, took guardianship of one of the persons entitled to a share, who was a minor; it was *held*, that by operation of law, she held the amount by way of retainer, as guardian, and not as administratrix.

[Cited in Pratt v. Northam, Case No. 11,376.]
[Cited in White v. Ditson, 140 Mass. 355, 4 N. E. 606.]

2. No suit lay against her sureties upon the administration bond for the amount due her ward.

[Cited in Bell v. People, 94 Ill. 236; White v. Ditson, 140 Mass. 355, 4 N. E. 606; Proctor v. Robinson, 35 Mich. 290; Carroll v. Bosley, 6 Yerg. 223. Distinguished in Smith v. Gregory, 26 Grat. 261. Cited in brief in Swope v. Chambers, 2 Grat. 322.]

This was an action of debt brought officially by the judges of the court of probate for the benefit of Jane Deblois, a citizen of Massachusetts, upon an administration bond given by her mother, Jane Deblois, with sureties, upon taking administration of the estate of her late husband, Stephen Deblois. The suit was brought against the defendants, as heirs at law of Silas Dean, one of the sureties upon the administration bond, according to the local law, which makes the estate of the ancestor assets for the payment of his debts in the hands of his heirs. Dig. R. I. Laws 1798, pp. 305, 306, 308. See, also, Brown v. Strode, 5 Cranch [9 U. S.] 303. The object of the suit was to recover the amount of the distributive share of Jane Deblois, the daughter, in her father's estate, which had been declared, by the court of probate, to be $3704.79. The pleadings were somewhat complicated, and all terminated in demurrers, so that upon the whole the case stood for the judgment of the court upon questions of law. The material facts, stripped of the artificial form of the pleadings, were as follows: Mrs. Deblois took the administration of her husband's estate in February, 1805, and gave the usual bonds, in which the father of the defendants joined, as surety. She soon afterwards appointed her son Stephen, as her attorney, to transact the whole business of the administration, which he accordingly executed. In March, 1807, an administration account was settled in the probate office, by which the shares due to the

[1] [Reported by William P. Mason, Esq.]

heirs were ascertained, and, among others, of Jane, the daughter, amounting in the whole, as has been stated, to the sum of $3704.79. The distributive shares of several of the heirs, who were of age, were duly paid; but Jane, the daughter, being a minor under twelve years of age, was incapable by law of receiving her share. Her mother (the administratrix), in May, 1808, was duly appointed her guardian by the court of probate, as well as guardian of another minor child, and in September following she gave the usual bonds with sureties for the performance of that trust. In October, 1808, she signed a certificate to the court of probate, stating that as guardian she had in "her possession or control" the full amount of the distributive shares of these minors; and thereupon the court ordered a quietus to be given to her as administratrix of her husband. This quietus, in substance, stated that she having fully administered the estate, the court ordered "that she be, and hereby is, from henceforth acquitted and discharged of the same." The pleadings on behalf of the plaintiffs [Nicholas Taylor and others] proceeded farther to assert that, in point of fact, Mrs. Deblois, at the time of signing the certificate, had not "in her possession or actual control," the distributive shares of the minors, but that the same were then, and always before and after, in the possession and control of Stephen Deblois, her attorney, who wasted the same, and converted them to his own use. And the pleadings on behalf of the defendants, after relying upon the decree and settlement in the court of probate, farther asserted, that at the time of her taking the guardianship aforementioned, the mother and her sureties, as well as her attorney, were all solvent, and possessed of ample means to pay the distributive shares of the minors.

Pitman & Pearce, for plaintiffs.

Hunter & Robbins, for defendants.

STORY, Circuit Justice. Much discussion has taken place as to the nature and effect of the quietus granted by the court of probate. I am not aware, however, that it is any where denied, that the court of probate has complete jurisdiction in the settlement of the accounts of administrators; or that its decree, when rightfully made, is not of binding authority. Indeed, it would be difficult to support such a denial upon principles of general law, since it is a decree of a court of competent and peculiar jurisdiction. But the statute of Rhode Island puts this matter entirely at rest. It declares (Dig. R. I. Laws 1798, p. 304, § 25) "that the settlement of the accounts of any executor, administrator, or guardian by the court of probate, or in case of appeal by the supreme court of probate, shall be final and conclusive on all parties concerned, and shall not be subject to re-examination in any way or manner whatso-

ever:" Nor do I understand, that it is contended that the court of probate has not, upon a final settlement of accounts, a right to grant to the administrator a decree, exonerating him from any farther accountability in the premises. If it has authority conclusively to settle his accounts, it certainly has authority to decree that the settlement is final, and to acquit him of farther proceedings. This is the whole nature and effect of a quietus, a process familiar in the court of exchequer (Com. Dig. "Quietus"), and probably not unknown in the ecclesiastical courts, and at all events used and approved by the court of probate in Rhode Island, as a proceeding emanating from its general jurisdiction. It is not for me to revise its mode of administering its acknowledged powers. But consistently with giving a conclusive effect to a decree of the court of probate it may be admitted, that fraud will vitiate them; for that is a principle common to all judgments, however high. And the conclusiveness of a decree extends no farther in its effects, than to the direct subject matter in controversy, and certainly not to collateral things. A decree obtained by fraud may therefore be avoided for that cause, upon due allegations and proof; and a substantive matter, not directly included in the decree, as, for instance, the subsequent receipt of assets, or the subsequent payment of a distributive share, is certainly open to controversy. Whatever may be perfectly true, consistently with the verity of the decree, or does not impeach it, may be put in contestation.

In the present case, giving the strongest import to the pleadings, there is no allegation that the decree of the court of probate was obtained by fraud. Now nothing is better settled, than that fraud is not to be presumed, but must be proved. And not only must it be proved, but it must be averred in the pleadings; so that it may be put in issue, if the intention is to overthrow the decree by impeaching its integrity. So far, then, as the argument calls upon the court for its judgment in favor of the plaintiffs, upon the ground of fraud, it is a sufficient answer, that the pleadings put no such allegation. The only averment, bearing at all upon the point, is, that the certificate of Mrs. Deblois to the court of probate, on which the decree of the latter proceeded, was untrue, because the money for the distributive shares of the minors was not in her possession, or under her "actual control." But this may be true, and yet the certificate have been given in entire good faith and purity. It may have proceeded upon a mistake of fact or of law. It is one thing to impeach a decree for mistake, and quite a different thing to impeach it for fraud. It is not, however, permissible in pleading to aver facts, from which fraud may be conjectured or inferred; the ultimate fact of fraud must itself be stated; and the circumstances are mere matters of evidence. But I confess myself unable to discern upon the pleadings any

fact, which establishes the certificate to have been false. It is not averred, that the attorney had at that time wasted or converted the portions of the minors to his own use. For aught that appears, he was then in the possession and control of them; and his possession and control was the possession and control of his principal. The pleadings seek to make a distinction between the possession and "actual control" of the administratrix, and her legal possession and control in virtue of those of her agent. But the certificate states nothing of actual control, and in its simplicity of phrase comports with the other facts.

In this view, there is no ground on which the court can overturn the conclusiveness of the decree upon the suggestion of fraud.

The real and the only question in the case is, whether Mrs. Deblois, being at the same time administratrix and guardian, could by any act of her own, or by operation of law, transfer the property, which was in her hands as assets of the intestate, so as to make it the property of the minors, who were her wards, and thus exonerate herself from any farther liability as administratrix, and by consequence also exonerate the sureties upon her administration-bond. My opinion is that she could; and that the certificate was to all intents and purposes a conclusive election to hold the property as guardian, and not as administratrix.

But independent of this special ground, there is another, which appears to me to dispose of the case upon general principles. It is an established principle of the common law, that an administrator has a right to retain the effects of his intestate to the amount of the debt due to himself; and if the debt amounts to the whole effects of the intestate, and there is no debt of a higher degree, he is entitled to the whole effects. In such a case there is a complete transmutation of the property in favor of the administrator by the mere act and operation of law, and it is equivalent to a judgment and execution, for he is incapable of suing himself. So the law was laid down by the judges in Woodward v. Lord Darcy, Plow. 184, 185,[2] who declared, that in such a case "the operation of law was equivalent to a recovery and execution for him, and the property is as strongly attested as it could be by recovery and execution. So that the reason, why the action is gone is, because he has full satisfaction by the alteration of the property." The doctrine here stated is applied to the case of a creditor, or, as Plowden calls him, debtee, in his own right. But the same principle also applies to a creditor in autre droit. So was the case of Burnet v. Dixe, reported in 1 Rolle, Abr. "Executors," lib. 3, and somewhat differently, and probably not quite so accurately, in 2 Brownl. & G. 50. There A was indebted to B and to C, by several obligations, and died, and D took administration;

and afterwards B made D his executor, and died; and it was held, that D might retain goods, which came to his hands, as administrator of A, to satisfy the debt due to him as executor of B. In Brownlow's Reports the court admitted the general doctrine, but is made to say, that the election to retain ought to be before suit brought by another creditor. This part of the opinion is not noticed by Rolle, and seems contrary to the doctrine of other cases. See Weeks v. Gore, 3 P. Wms. 184, Cox's note B; 11 Vin. Abr. "Executors," (L), pl. 12; Williamson v. Norwitch, Style, 337; Toller, Ex'rs, bk. 3, c. 3; 3 Bac. Abr. "Executors and Administrators," A, 9; Cock v. Cross, 2 Lev. 73.

If then it be a right of the administrator to retain a debt due to him, in his own right, or in the right of another, the doctrine equally applies, where he unites in himself the character of guardian, and has assets in his hands to discharge the debt due to his ward. I go further and consider it the duty of the administrator, under such circumstances, to retain; and if he were to yield up the assets without such retainer, it would, in my judgment, be a mal-administration of his guardianship, for which, in case of loss, he and his sureties might be justly held responsible upon the guardianship-bond. Suppose, for instance, in the present case, the sureties upon the administration-bond were insolvent, and those upon the guardianship-bond were solvent, it would be difficult to perceive upon what ground the latter could resist payment of the amount of the distributive shares of the minors, since the administratrix would be bound to retain as guardian, and must be presumed to do her duty. That the right of retainer exists in other cases, as well as in that of administrations of different estates, is clearly established by Plumer v. Marchant, 3 Burrows, 1380, where the defendant united in himself the character of trustee as well as administrator; and the court held, that he was entitled to retain for a debt due to himself, as co-trustee, from the estate of his intestate.

In short, the general principle, in cases of retainer is, that where the party unites in himself, by representation or otherwise, the character of debtor and creditor, inasmuch as he cannot sue himself, he is entitled to retain, and the law will presume a retainer in satisfaction of the debt, if there are assets in his hands. Therefore, in the common case of a creditor-executor his action is gone for ever, if he has assets in his hands; "because," as the court, in Plow. 185, said, "in judgment of law he is satisfied before; for if the executor has as much goods in his own hands as his own debt amounts to, the property of these goods is altered, and vested in himself; that is, he has them as his own proper goods in satisfaction of his debt, and not as executor." Fryer v. Gildridge, Hob. 10, is a strong illustration of the principle. There, two were bound jointly and severally in an obligation. The

---

[2] See, also, Toller, Ex'rs, bk. 2, c. 7; Id. bk. 3, cc. 3, 4, § 9.

obligee made the wife of one of the obligors his executrix, and died. The wife administered, and then her husband (the obligor) made her his executrix, and died, leaving assets to pay the debt. Then she died; and the plaintiff took administration, de bonis non, upon the estate of the obligee, and brought his action against the surviving obligor; and the court held the obligation gone, for two reasons; the first was, that, when the obligee made the wife of one of the obligors his executrix, the action was at least suspended, and the rule is, that a personal action, once suspended, is extinct. But the second reason (it was said) is the surer, when the obligor made the executrix of the obligee his executrix, and left assets, the debt was presently satisfied by way of retainer, and consequently no new action can be had for that debt. The last reason is directly applicable to the present case, and, in my judgment, governs it. Here, after the guardianship, the administratrix having assets to pay the amount of the distributive shares, it was presently satisfied by way of retainer, and by operation of law there was a transmutation of the same to her as guardian and she no longer held the same as administratrix. Upon this general ground there was no longer any demand against her as administratrix, and by consequence her sureties on the administration bond are relieved from all further responsibility. Judgment therefore must, upon the pleadings, be rendered for the defendants. Judgment accordingly.