JOEL H. CRANSON, JUDGE OF PROBATE, FOR THE USE OF
     DAVID H. RHEUBOTTOM, V. ARMINA WILSEY,
          JAMES FRANKLIN MEAD, AND JAMES
               •I. MEAD.

*Executors and administrators—Bond—Distribution of estate—Liability of surety—Leave to sue—Amendment of record in Supreme Court.*

1. An order of distribution *alone* cannot discharge executors until the estate is distributed.

2. It is a dangerous and incorrect doctrine that executors can discharge themselves of their official responsibility without doing some act to change the character of their holding, and place the fund safely where it ought to be.

3. Where executors, after an order for distribution, make a wrongful conversion of the property to the use of one of them, it is a clear breach of duty, for which action will lie on their bond.

4. Where leave was granted to an administrator appointed on the removal of the executors, who had failed to comply with the order of distribution, and had converted the property to the use of one of them, for leave to sue on their bond, which suit was prosecuted to judgment in the name of the judge of probate for the use of a contingent residuary legatee, who had no definite interest, the record was amended in the Supreme Court so as to show the administrator as the party in interest, he being entitled to take the fund, and see to its proper investment.

Error to Clinton. (Smith, J.) Argued June 28, 1888. Decided July 11, 1888.

Debt on an executors' bond. Plaintiff brings error. Reversed, and judgment rendered on the findings below *nunc pro tunc* for the penalty of the bond, to be satisfied on payment of the amount found due, etc. The facts are stated in the opinion.

*H. & H. E. Walbridge* and *O. L. Spaulding,* for appellant, contended :

1. The execution of a trust of this nature is legally committed to the executors; citing *Haddon v. Hemingway,* 39 Mich. 615; *Hinckley v. Probate Judge,* 45 Id. 343.

2. It is clearly within the terms of the bond. By its terms the executors are required to pay all legacies, which they have not done; citing *Supervisors v. Jones,* 19 Wis. 61.

3. The surety on the executors' bond will be liable for their acts as trustees; citing 2 Perry, Tr. § 574.

4. The executors and the surety were cited, and showed no cause why this bond should not be put in suit, and took no appeal. He has had his day in court, and if his principals are liable so is he; citing *Clark v. Fredenburg,* 43 Mich. 266.

5. But, in any event, the executors could not hold as trustees instead of as executors, until as executors they had settled their administration account, and the balance due from them as executors allowed to their credit as being retained by them as trustees; citing *Hall v. Cushing,* 9 Pick. 406; *Conkey v. Dickinson,* 13 Metc. 51; *Williams v. Cushing,* 34 Me. 370.

*Kilbourne & Humphrey,* for defendants Mead, contended :

1. A surety on an executors' bond cannot be held liable for any duties beyond the statutory requirements of the executors; citing How. Stat. §§ 6801–6807; *Hinds v. Hinds,* 85 Ind. 312; *Groton v. Ruggles,* 17 Me. 137; *Williams v. Cushing,* 34 Id. 373.

2. On the assignment of the residue of the estate, the executors ceased to act as such, and commenced to act as trustees; citing *Calkins v. Smith's Estate,* 41 Mich. 412; *Brown v. Forsche,* 43 Id. 497, 500; *Hinds v. Hinds,* 85 Ind. 315.

3. The surety is only liable for the obligations fairly intended at the execution of the bond, and cannot be held for a breach of other duties attached to his principal's office; citing *Wyman v. Hubbard,* 13 Mass. 233; *Biddle v. Wendell,* 37 Mich. 454; *White v. East Saginaw,* 43 Id. 567; *Hat Manufactory v. Messinger,* 2 Pick. 223; *Bank v. Chickering,* 4 Id. 314.

CAMPBELL, J.    This suit was brought on an executors' bond, given by the defendants Armina Wilsey and James Franklin Mead, as executors of David G. Wilsey, deceased,

and Delos C. Wiley and James I. Mead as sureties. Wiley died several years ago. James I. Mead has died pending these proceedings in error.

David G. Wilsey's will was probated January 23, 1871. He left to his widow, the defendant Armina Wilsey, a life-interest in realty, and some personal property was also bequeathed to her. The residuary personal property, after providing for various matters, was to be divided so as to give half to his daughter, Mary D. Fitz, and the remaining half, on certain contingencies, to the two children of a deceased daughter, Calvin W. and David H. Rheubottom, who were then small infants, and who took a residuary interest in land after the death of the widow. The bequest to these children was conditioned that in case either died it should go to the survivor, but not in any case to become vested until he should reach the age of 21 years. In case of death without issue before reaching that age, the property was given to others. This fund was to be invested, and the income re-invested, in real-estate mortgages at 10 per cent. The education of these children was placed in charge of the executors, who were authorized to use so much of the income as should be allowed by the judge of probate. Calvin W. died without issue while a minor. David Henry Rheubottom was born December 7, 1869, and is still a minor.

On May 20, 1872, the probate court ordered a division of personal property, without requiring its conversion into cash, and the executors were required to pay Mrs. Fitz certain securities, amounting to $987.27½, and to "take for the grandchildren of said deceased, Calvin Wilsey Rheubottom and David Henry Rheubottom," several notes and accounts, a reaper, and $314.12 in cash, making $987.27½.

Nothing further was done in the probate court until October, 1884, when John A. Sleight, guardian of David

H. Rheubottom, petitioned that the executors should account and file a new bond. This petition set up the death of Calvin, the insolvency of James F. Mead, the doubtful sufficiency of James I. Mead, and a fraudulent disposition of Armina Wilsey's property. The executors were cited to account, but failed to do so. A petition was then made for their removal, and for the appointment of an administrator. Upon the hearing they were removed, and Irving M. Eaton was appointed to act as administrator with the will annexed.

Mr. Eaton then applied for leave to sue on the bond, and leave was granted. The breaches assigned are the conversion of the fund to Mead's own use, with the consent of Mrs. Wilsey, a failure to use the income to educate David, and a failure to account.

The circuit judge found as facts, among other things, the order of 1872 for distribution, and a failure to invest the funds as required by the will, and its investment in real estate in the name of James Franklin Mead, by consent of Mrs. Wilsey. The court further found the probate action before mentioned, which was not appealed from, but held that after the order of 1872 the executors did not hold the estate officially as such, but as donees of a power in trust, and that their sureties were not liable. It was held further, as matter of law, that the removal and other recent proceedings were not valid.

We do not think the conclusions of law are correct. An order of distribution alone cannot discharge executors until the estate is distributed. The Rheubottom children could not take the property, and inasmuch as their interest was contingent no one else could take it for them. The will required it to be invested by the executors. If the property had been invested in real-estate securities as required, the question might have arisen whether this was not equivalent to such a compliance with the order of

distribution as would have changed the nature of their holding. Upon this question we express no opinion. It is at least a doubtful proposition. But we think it is a dangerous and incorrect doctrine that executors can discharge themselves of their official responsibility without doing some act to change the character of their holding, and place the fund safely where it ought to be.

As the finding is that they did no such thing, but made a wrongful conversion of the property to the use of one of them, we think this was a clear breach of duty, for which action would lie on the bond.

It is claimed, however, that this action was brought in the name and for the use of David Rheubottom, who has no definite interest. This is undoubtedly true, and the action should not have been for his use. But the leave was granted to the administrator, who is a proper party, and who is entitled to take the fund, and see that it is duly invested. Inasmuch as the judge of probate is the proper plaintiff, we see no reason why the record should not be so amended as to make it show the administrator as the party in interest, and it will be so done.

The finding does not show that the fund could have been compounded at 10 per cent., and there is doubt whether it could have been. But interest computed in the ordinary way at 10 per cent. will make good the conversion, and will be allowed. This will fix the amount of the judgment at $987.27½, with interest to the day when the writ of error was issued. This seems to be the first suit on the bond.

Judgment will be rendered *nunc pro tunc* as of that date for the penalty, to be satisfied on payment of that amount, with costs of both courts against the executors and James I. Mead, inasmuch as it is, in our view, the legal effect of the finding of facts.

The other Justices concurred.