Mary Cluff, Suing in Behalf of Herself and Others, Appellants, *v.* Henry S. Day et al., Respondents.

C., by his will, gave all his property to T., who was appointed executor, in trust to convert the same into money, invest the proceeds, pay the interest to the widow of the testator during life, and, upon her death, to divide the principal among his children. In a proceeding instituted by the widow, the plaintiff herein, for a final settlement of T.'s accounts as executor, the surrogate's decree charged him with a balance then in his hands; this balance it was decreed that "the said executor retain, invest and keep invested * * * according to the trust contained in the will." The decree did not in terms discharge the executor. Plaintiff thereafter applied for a further accounting, upon which it was adjudged that T. should pay into court the principal of the estate, and to plaintiff a balance of income due her. T. failed to pay as directed, and thereupon his letters were revoked. The complaint in this action, which was upon the bond given by T. as executor, alleged and it appeared that T. did not set apart any securities and made no investment of the trust fund. The defense was that the effect of the original decree was to terminate T.'s duties as executor, and that thereafter he acted only as trustee, and for such action his sureties were not liable. *Held,* untenable; that the retention by T. of the trust fund was not necessarily the act of a trustee as distinguished from that of an executor; that he did nothing to indicate that he treated the fund as held by him in any capacity other than that in which he had received it; that the duty in respect to investment having been imposed by the will, said decree might be treated as if it contained no direction in that respect, and the only practical effect of it was a settlement of T.'s account as executor; that it was entirely consistent therewith that the fund should be retained by T. in that capacity until invested; and that, therefore, the sureties were liable for his failure to obey the subsequent decree.
*Cluff* v. *Day* (23 J. & S. 460), reversed.

(Argued December 15, 1890; decided January 14, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 9, 1888, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought upon a bond executed by the defendants, as sureties, for Edward E. Tower, as executor of the will of Burgess Cluff, deceased.

The will contained these provisions :

" First. I give, devise and bequeath all my property, of every name or nature whatsoever, unto Edward E. Tower, of the town of Cohasset, in the state of Massachusetts, to be held by him in trust, nevertheless, for the following purpose and no other," to wit : To convert the property into money and invest the same in good securities, and pay the interest from time to time to his widow (the plaintiff), and after her death to divide it among his children. And lastly he appointed Tower executor of the will. The testator died in 1871, and letters testamentary were issued to Tower. In a proceeding on her application had before the surrogate for final settlement of his accounts as executor, a decree was made in November, 1873, whereby he was charged with a balance of $12,222.98, which it was decreed " that the said executor retain, invest and keep invested * * * according to the trusts and provisions contained in said last will and testament." This amount was sub-. sequently reduced by modification of the decree to $10,037.98.

In 1886, on the application of the plaintiff for a further accounting in the Surrogate's Court, it was adjudged that Tower forthwith pay into the court $10,037.98, principal of estate, and to the plaintiff, $2,050.76, the balance due her as income, that he pay a specified amount charged against him for costs into the Surrogate's Court. He failed to pay as directed. His letters were revoked.

Further facts are stated in the opinion.

*Edward B. Whitney* for appellants. The decree of 1886, in terms, charged Tower as executor, and not as trustee. (*In re Cluff*, 25 Wkly. Dig. 375.) Defendants were privy to that

decree and are bound thereby, whether erroneous or not, at least unless they can show a prior decree expressly or impliedly discharging their bond. (*Thomson* v. *MacGregor*, 81 N. Y. 592, 597; *Douglass* v. *Howland*, 24 Wend. 35; *Scofield* v. *Churchill*, 72 N. Y. 565; *Annett* v. *Terry*, 35 id. 256; *Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391; *Casoni* v. *Jerome*, 58 N. Y. 315; *Miller* v. *Montgomery*, 78 id. 282; Code Civ. Pro. §§ 399, 829, 2473, 2685, 2724; *Kelly* v. *Mist*, 80 N. Y. 139, 146; *Gerould* v. *Wilson*, 81 id. 573; *Harrison* v. *Clark*, 87 id. 572; *Hood* v. *Hood*, 85 id. 561, 578; *Deobold* v. *Oppermann*, 111 id. 531; *Rowe* v. *Parsons*, 6 Hun, 338, 344; *Bolton* v. *Jacks*, 6 Robt. 166; *Jenks* v. *Stebbins*, 11 Johns. 226; *Barber* v. *Winslow*, 12 Wend. 102; *Dyckman* v. *Mayor, etc.*, 6 N. Y. 434; *Porter* v. *Purdy*, 29 id. 106.) The decree of 1873 did not discharge defendants; nor have they been discharged by any matter in pais. (*Deobold* v. *Oppermann*, 111 N. Y. 531; Redf. Sur. Pr. chap. 19; *Glover* v. *Holley*, 2 Bradf. 291; *Andrade* v. *Cohen*, 32 Hun, 225; *In re Hood*, 98 N. Y. 363; 104 id. 107; *People* v. *Baker*, 76 id. 78, 83; *Hargrave* v. *Smee*, 6 Bing. 244; *E. N. Bank* v. *Kaufman*, 93 N. Y. 273, 280; *C. R. Bridge Case*, 11 Pet. 589; *Ins. Co.* v. *Wright*, 1 Wall. 458, 468; *Hoffman* v. *Æ. Ins. Co.*, 32 N. Y. 405, 413; *Walrath* v. *Thompson*, 4 Hill, 200, 202; 2 Whart. on Cont. § 670; *Foster* v. *Rockwell*, 104 Mass. 167; *Hobart* v. *Littlefield*, 13 R. I. 341, 344; *Ireland* v. *Livingston*, 5 H. L. Cas. 396; *Gates* v. *McKee*, 13 N. Y. 232, 236; Code Civ. Pro. §§ 2600, 2601; *Conkey* v. *Dickinson*, 13 Metc. 51.) Plaintiff is entitled to judgment irrespective of the question whether or not there was irregularity or error in the proceedings of 1886. (*Mundorf* v. *Wangler*, 12 J. & S. 495; *People* v. *Rowland*, 5 Barb. 449.) There was no error in the decree of 1886, nor any irregularity in the prior proceedings which was not cured by the decree. (Code Civ. Pro. §§ 721, 723, 2538, 2819.)

*Eugene D. Hawkins* for respondents. The will of testator creates a trust which does not pertain to the office and duties

of his executorship, and appoints Edward E. Tower the trustee of such trust. (Perry on Trusts, § 262 ; Code Civ. Pro. § 2514; *Parsons* v. *Lyman,* 5 Blatchf. 170 ; *In re Schell,* 53 N. Y. 263 ; *In re Wadsworth,* 2 Barb. Ch. 381 ; *Johnson* v. *Lawrence,* 95 N. Y. 154 ; *Hurlburt* v. *Durant,* 88 id. 126; *Hall* v. *Hall,* 78 id. 538.) The duties and responsibilities of said Tower, as executor, terminated and his separate duties as trustee commenced in 1873, some eight years before the issuing of the citation of the special proceeding for his second accounting, and nearly thirteen years before the termination of said proceeding. (*Laytin* v. *Davidson,* 95 N. Y. 263 ; *Hurlburt* v. *Durant,* 88 id. 121 ; *Phœnix* v. *Livingston,* 101 id. 451; *In re Mason,* 98 id. 527 ; *In re Willets,* 112 id. 289 ; *Blake* v. *Blake,* 30 Hun, 471 ; *Johnson* v. *Lawrence,* 95 N. Y. 154.) Tower accepted the trusts under said will and entered upon the duties of his trusteeship as distinct and separate from his duties as executor before the proceedings were begun on which the decree of 1886 was based. (*Earle* v. *Earle,* 16 J. & S. 23 ; 93 N. Y. 110 ; 3 Redf. on Wills, 530 ; *Cocks* v. *Barlow,* 5 Redf. 411 ; *Green* v. *Green,* 4 id. 359 ; *Judson* v. *Gibbons,* 5 Wend. 224; *In re Gilbert,* 39 Hun, 67 ; *Warner* v. *Knower,* 3 Dem. 212 ; *Seegar* v. *State,* 6 H. & J. 162 ; *White* v. *Ditson,* 140 Mass. 354; Code Civ. Pro. § 1337; *Hynes* v. *McDermott,* 91 N. Y. 451 ; *People* v. *French,* 92 id. 306.) There has been no disobedience by Tower as executor of the decree of 1873. (*Laytin* v. *Davidson,* 95 N. Y. 266 ; *West* v. *Van Tuyl,* 119 id. 620.) The decree of 1886 is against Tower as trustee and not against him as executor. (*White* v. *Ditson,* 140 Mass. 354.) The decree of 1873 has never been vacated, hence is still in force and effect, and no other account of the matters therein adjudicated could be or has been required in the Surrogate's Court. (*Brick's Estate,* 15 Abb. Pr. 12 ; *In re Hood,* 90 N. Y. 512 ; *In re Tilden,* 98 id. 434; *In re Hawley,* 104 id. 250 ; *Wood* v. *Brown,* 34 id. 343 ; *Patrick* v. *Shaffer,* 94 N. Y. 430 ; *Jordan* v. *Van Epps,* 85 id. 436 ; *Smith* v. *Smith,* 79 id. 634.) There is no evidence in the case to the effect that Tower did not have the funds of the estate in his hands at the

time of the making of the decree of 1873. (*Ferguson* v. *M. L. Ins. Co.*, 22 Hun, 324; *R. P. Co.* v. *O'Dougherty*, 81 N. Y. 474.) If it should be held that the decree of 1886 is against Tower as executor then such decree is void for the reason that the surrogate had no jurisdiction to make it. (*In re Hood*, 90 N. Y. 512; *In re Soutter*, 105 id. 515; *Browning* v. *Vanderhoven*, 4 Abb. [N. C.] 166; *Thayer* v. *Clark*, 4 Abb. Ct. App. Dec. 391, 394; *Beams* v. *Gould*, 77 N. Y. 459; *Harrison* v. *Clark*, 87 id. 577; *Conni* v. *Jerome*, 58 id. 322; *Craig* v. *Town of Andes*, 93 id. 411.) Investments of the trust estate were to be made by Tower as trustee and not as executor. (*Laytin* v. *Davidson*, 95 N. Y. 263; *Johnson* v. *Lawrence*, Id. 154.) The surrogate had no authority or jurisdiction to combine in one proceeding and in one decree a judicial settlement of an executor or trustee's account and the removal of an executor or trustee. (Code Civ. Pro. §§ 2603, 2724; *Ashley* v. *Lamb*, 50 Hun, 568.) The sureties on the executor's bond are not liable for his acts as trustee where his trusteeship is distinct and separate from his executorship. It is the same as if a third person had been appointed trustee. After his executorship ceases, if he should die, an administrator with the will annexed could not take charge of the trusts, but a new trustee would have to be appointed. (Perry on Trusts, § 262.)

BRADLEY, J. The action was brought under section 2609 of the Code of Civil Procedure, and the plaintiff in the complaint alleges the decrees of the surrogate made upon the accounting of Tower in 1873 and in 1886, and that at the time of the former he did not set apart anything to represent the balance charged against him by the decree, and made no investment of the trust fund pursuant to it, and that he disobeyed each and both of such decrees of the surrogate. The defense rests mainly upon the alleged ground that the effect of the decree of 1873 was to terminate Tower's duties as executor, and that thereafter his functions were those of trustee only, in respect to the estate, and, therefore, the defendants as

sureties in his bond as executor were no longer responsible for his administration of it. If these premises are correct, such conclusion necessarily follows, because the decree of 1873 remains unimpeached, and as between the parties is conclusive as to the matters within the scope of its determination. That decree purports to and does represent a final accounting of the executor as such, and by it he was charged with a balance, as afterwards modified, of upwards of $10,000. The question presented here is whether the executor as such was discharged by the decree of 1873. If he was, the decree of 1886 must be treated as made upon an accounting by Tower as trustee, and if not so discharged it was within the jurisdiction of the surrogate to require and to take his accounting as executor, although it would not go back of the former decree as to the state of the account, but would have relation to the time and transactions subsequent to it. (*In re Hood*, 90 N. Y. 512; *In re Soutter*, 105 id. 514.) And then liability upon the bond would arise from the failure of the executor to obey the decree of 1886. The former decree did not in express terms discharge the executor. The investment and its continuance would seem to call into exercise the functions of a trustee rather then those of an executor; and it may be that it was in view of that purpose that he was directed to retain it, but his retention of it was not necessarily the act of a trustee as distinguished from that of an executor. The question became one of construction and effect of that provision of the decree, and upon that subject it may be well to consider the question in the light of the authorities having some relation to it. In *Laytin* v. *Davidson* (95 N. Y. 263), the will referred to contained provisions requiring the exercise of functions executorial and those of a trustee. A final accounting of the executors was had before the surrogate, and by the decree the amount of the capital of the estate remaining in their hands was determined, and they were directed to retain and hold it "as trustees under the last will and testament" of the testator. The court, in the opinion delivered by Judge ANDREWS, said: "The decree did not in terms discharge the executors, but this was the reasonable intend-

ment and legal effect of the direction that they should retain
and hold the whole balance of the estate as trustees under the
will. The fact that the trustees have not made an actual divi-
sion of the trust fund into shares as directed by the will, does
not, we think, change the question. * * * The executors
have upon a final accounting as executors been discharged as
such. The fund has become exclusivly a trust fund under the
will to be held by the trustees," etc. Our attention is also
called to *Matter of Estate of Hood* (98 N. Y. 363), where
there was a final accounting of the executors, and the decree
of the surrogate directed "that the balance of said moneys,
being the sum of $53,710.69, said executors shall hold and
invest pursuant to the powers in said last will and testament,"
and it was held in a proceeding to revoke the letters testa-
mentary of one of the executors, that he as such was not dis-
charged by that decree. And in the opinion of the court,
delivered by Judge MILLER, it was said that in the absence of
any direction in the will that the executors should become
trustees, no reason exists why the executor, whose account was
settled, should not continue to act in that capacity. "When
the decree was made he was clearly an executor and held these
funds in his hands and was liable for the same as such," and
"even if, under the will it was possible for the executor to
have become a trustee, he could not have done so until there
had been a final accounting and a discharge by decree of the
surrogate from his position as executor, or by direction in the
decree that he take and hold the property as trustee as distinct
and separate from his functions as executor." And added that
"at the time of the decree the executors had not fully per-
formed their functions, and their duties had not terminated.
This fact is a complete answer to the position that the exec-
utors became trustees after the decree of the surrogate." And
remarked that the *Laytin* case was not adverse to such views
as "trusts were there created under the will, and the decree
of the surrogate directed the property to be held by the exec-
utors as trustees." The ground of distinction founded solely
upon the decrees of the surrogate in the two cases cited, seems

to be in the use in the one and absence in the other of the word "trustee," as relating to the character in which they should retain and invest the fund. But back of those decrees and in reference to the wills, it is said that a period of time was contemplated by the testator in the *Laytin* case when the duties of the executors as such would end and they should assume the character of trustees only, which was not applicable to the will in the *Hood* case. The fact, however, remains that in the latter case the direction to invest applied to all the property remaining in the hands of the executors, and allowance was made to the executor Hood of his commissions.

The *Matter of Hood* (104 N. Y. 103) again came up on appeal from an order directing him as late executor to render an account before the surrogate; and in referring to the former review Judge Finch in speaking for the court said: "We then held, passing by the inquiry whether under the will it was possible for him to exchange the character of executor for that of trustee, that he had not effected such exchange, and remained executor only, and removable as such for his misconduct in that capacity. We pointed out that on the accounting in 1869, he was not discharged, was not directed to hold the remaining assets as trustee, was not credited with such transfer and his account thereby balanced, but the decree entered directed as to the assets remaining that 'the said executor shall hold and invest pursuant to the powers and directions contained in said last will and testament.' There had been no payment to the defendant as trustee, no new account opened and kept in the new capacity, and no separation or division of the fund allotting to the beneficiaries their exact and specific proportions."

These views tend to illustrate the principal of the decision of the court on the former review and they seem to indicate that to some extent at least the distinction between it and the *Laytin* case was in the direction given by the surrogate's decrees.

In *Matter of Willets* (112 N. Y. 289), it was held that it was not within the contemplation of the will that the two

functions of executors and trustees were to co-exist, but that those of the former were to first be executed and the latter to follow. The surrogate settled their accounts as executors and ordered them out of the "balance of principal in their hands to pay to themselves as trustees" a sum mentioned. It was held that their functions as executors then terminated, and they assumed those of trustees. That case came fairly within the doctrine of the *Laytin* case.

In *Johnson* v. *Lawrence* (95 N. Y. 162), where the indication in the will was that the two functions might co-exist, and that no separation of them was contemplated, the court said that " taking the adjudged cases together, they appear to establish that to entitle the same persons to commissions as executors and as trustees, the will must provide, either by express terms or by fair intendment, for the separation of the two functions and duties, one duty to precede the other, and to be performed before the latter is begun or substantially so performed    *    *    *    and that where the will does so provide for the separate and successive duties, that of the trustee must be actually entered upon and its performance begun either by real severance of the trust fund from the general assets, or a judicial decree which wholly discharges the executor and leaves him liable only as trustee." And on the subject see *Hall* v. *Hall* (78 N. Y. 535) ; *In re, etc., Mason* (98 id. 527) ; *Phœnix* v. *Livingston* (101 id. 451).

In all these cases, except that of *Hood*, the controversies were in respect to commissions and whether the executors and trustees were entitled to them in both capacities, and more especially in the latter. And to entitle them to commission also as trustees, it must appear by the will that the separation of the two functions was clearly intended by the testator, and has been effected, or that the office of executor has been terminated by the discharge of him as such by the decree of the surrogate made upon his accounting, whereby the matters of the testamentary trust solely are devolved upon him as trustee. In the present case, the trial court found that at the time of the accounting, in 1873, Tower had in his hands the money

charged in the decree. This must be assumed, as the fact does not necessarily appear to the contrary, and, therefore, no charge for any devastavit prior to that time arises for consideration. And as the executor was not by the express terms of the decree discharged, the determination of the question presented, is dependent upon the nature of the functions which he was, after the decree, permitted to exercise in respect to the fund. It may be observed that all the property of the testator was devised to Tower "to be held by him in trust," and he was directed to convert into money, invest it, pay the income to the plaintiff and after her death to divide it among his children. Tower was appointed executor to execute the provisions of the will. The duty of investing the fund and disposing of the income, and finally of the principal, was that of a trustee. But Tower took the estate in his hands as executor. And the decree directed "that the said executor retain, invest and keep invested the balance remaining in his hands  *  *  *  according to the trusts and provisions contained" in the will. Those provisions were for investment, payment of income and final distribution. He could retain the fund as executor, as directed by the decree, although the investment and what followed would be within the functions of a trustee. He made no investment and did no act indicating that he treated the fund as held by him in any capacity other than that in which he had received it. It is true that, as a general rule, when the same hand is to pay and receive, what is required by law to be done to accomplish it, will be deemed done, but it is entirely consistent with the decree that the fund be retained by him as executor until he should take an opportunity to invest it, and the transfer to him as trustee would be evidenced by the investment. The decree did not, as in the *Willetts* case, direct him as executor to pay the fund to himself as trustee, nor, as in the *Laytin* case, to hold it as trustee. The only practical effect of the decree was a settlement of the accounts of the executor, and it would have had the same effect for all the purposes to which it was entitled as made, if it had stopped with the adjudication of the balance against him as such, and directed the

payment of the costs and expenses of the proceedings as it did. The duty in respect to the investment, etc., was given by the will. So the case may be treated as if no direction had been given by the decree in that respect. Could it be effectually said that from the time of a mere adjudication of the settlement of the accounts of the executor, he ceased to hold the funds as such? It seems quite clearly not until he had in some manner done something to change his relation to it. In such case, as said by Judge FINCH in *Johnson* v. *Lawrence*, the duties of the trustee must be actually entered upon and performance begun, or the executor be wholly discharged by the decree of the surrogate. Neither was done in this instance; and, assuming that the fund remained in his hands at the time of such accounting, nothing appears to divest him of the relation of executor to it. The decree does not import his discharge as such; nor is a forced or doubtful construction justified for the purpose of giving to it such effect. In the *Phœnix* case, the trustees actually entered upon the performance of their duties as such. And as the executor in the case at bar was not discharged by the decree, nothing appears to warrant the conclusion that his functions as executor was terminated in respect to the fund. If these views are correct, the surrogate had jurisdiction to take the accounting of the executor and make the decree of 1886, and it must be treated as made upon the accounting of Tower as such. This is consistent with the provisions of that decree, and it was in that view that the application was entertained by the surrogate for the revocation of his letters testamentary, and decree made accordingly. The exceptions, therefore, to the finding of the trial court that the executor was discharged by the decree of 1873, and to the conclusions of law which followed were well taken. These views render it unnecessary for the purposes of this review to consider any other question.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.