## Sarah W. Story's Admr. *v.* A. K. Hall.

Special Term at Brattleboro, February, 1912.

Present: Rowell, C. J., Munson, Watson, and Haselton, JJ.

Opinion filed May 14, 1912.

*Executors and Administrators—Conversion of Funds—Bonds—*
*Liability.*

The precise correspondence of sums of money, consisting of dollars and cents and represented by numerous figures, may be sufficient evidence of identity, and so the finding that an executor used trust funds to pay his individual debts is warranted by the fact that shortly after he withdrew from such funds such odd amounts of money as $1,617.31, $1,368.87, and $1,322.75, those precise amounts of money were applied by him to his personal obligations.

Where an executor or administrator, having assets in his hands, is also guardian, or executor or administrator, of a legatee or distributee, he can elect to hold the share of that legatee or distributee in his character as such guardian, or executor or administrator, and thus exonerate the sureties in his original administration bond, and charge the sureties in the other, but, before the liability can be shifted from one class of sureties to the other, there must be some act of the executor or administrator from which may fairly be inferred his election to hold the property in a different capacity from that in which he received it.

Where an executor was also the residuary legatee's executor, a decree of the probate court finding a designated residue in his hands as executor in the first capacity, and ordering him to pay it over to himself as the residuary legatee's executor, did not discharge the surety on his bond as executor in the first capacity, where he filed no inventory or account of the residuary legatee's estate, but subsequently, and while the fund was still deposited in different banks in his name as executor in the first capacity, converted it to his own use.

Debt against the surety on a bond given to the probate court by Joseph C. Enright as the executor of the last will and testament of Henry L. Story. Plea, the general issue. Trial

by court at the June Term, 1911, Windsor County, *Powers, J.,*
presiding. Judgment *pro forma* for the plaintiff. The defendant
excepted. The opinion states the case.

*William Batchelder* and *Bert E. Cole* for the defendant.

By the decree of the probate court finding the designated
residue in Enright's hands as Henry L. Story's executor, and
ordering Enright, as such executor, to pay that residue over to
himself as Sarah W. Story's executor; the directed transfer was
accomplished by operation of law, thereby discharging defendant
from liability on the bond in question. *Sigourney* v. *Wetherell,*
6 Met. 553; *Tarbell* v. *Jewett,* 129 Mass. 457; 1 Woerner's Law
of Administration, (2nd Ed.) 551; *Taylor* v. *Deblois,* 4 Mason
131; *Plummer* v. *Marchant,* 3 Burr. 1380; *Pratt* v. *Northam,* 5
Mason 95; *Seegar* v. *State,* 6 Harr. & J. 162; *Watkins' Admr.* v.
*State,* 2 Gill & J. 220; *State* v. *Cheston,* 51 Md. 352; *Carroll* v.
*Bosley,* 6 Yerg. (Tenn.) 220; *Karr* v. *Karr,* 6 Dana 3; *Gray* v.
*Brown,* 2 Rich. 351; *State* v. *Hearst,* 12 Mo. 365; *Bell* v. *People,*
94 Ill. 230; *Ruffin* v. *Harrison,* 81 N. C. 208; *Barker* v. *Stanford,*
53 Cal. 451; *Coleman* v. *Smith,* 14 S. C. 511; *Adams* v. *Gleaves,*
10 B. J. Lea 367; *United States* v. *May,* 4 Mackey 4; *Taylor* v.
*McArthur,* 87 Iowa 155; *Harrison* v. *Ward,* 3 Dev. 417; *Harvey*
v. *Steptoe,* 17 Gratt 289; *Caskie* v. *Harrison,* 76 Va. 85; *Gray* v.
*Brown,* 2 Rich. 351; *Laylin* v. *Davidson,* 95 N. Y. 263; *Alston* v.
*Munford,* 1 Brock 266, 1 Fed. Cas. No. 267; *State* v. *Whitehouse,*
75 Conn. 410; *State* v. *Cheston,* 51 Md. 352; *Bell* v. *People,* 94
Ill. 230; *Carr* v. *Carr,* 6 Dana 3; *In re Scott's Account,* 36 Vt.
297; Schouler on Domestic Relations, (5th Ed.) §324.

*William W. Stickney, John G. Sargent, Homer L. Skeels*
and *Davis & Davis* for the plaintiff.

Where the executor of two estates converts to his own use
the fund in transit from one estate to the other, any legal pre-
sumption of the transfer is rebutted; and, besides, some act of
election to hold the property in a different character from that
in which it was received is necessary in order to work a con-
structive transfer. *Pratt* v. *Northam,* 5 Mason 95; *Wilson* v.
*Wilson,* 17 Ohio St. 150; *Potter* v. *Ogden,* 136 N. Y. 384; *Prior*
v. *Talbot,* 10 Cush. 1; *Miller* v. *Congdon,* 14 Gray 114; *White* v.

*Ditson,* 140 Mass. 351; *Harrison* v. *Ward,* 3 Dev. 417; *Clancy* v. *Carrington,* 3 Dev. 529; *Joy* v. *Elton,* 9 N. D. 428; *Probate Court* v. *Angell,* 14 R. I. 495; *Perkins* v. *Moore,* 16 Ala. 9.

HASELTON, J.    In this action the administrator *de bonis non* of the estate of Sarah W. Story seeks to recover from the defendant Hall, bondsman for Joseph C. Enright as executor of the estate of Henry L. Story.    The facts were found by the court.    The sum which the plaintiff was entitled to recover, if he could recover at all, was agreed upon.    On the facts found the court rendered judgment for the plaintiff for the agreed amount.    The defendant excepted.    The bond sued on was filed August 1, 1900, on which day the will of Henry L. was admitted to probate.    The residuary legatee of Henry L. was his wife Sarah W.    After his death she made a will in which Enright was named executor.    The widow died and her will was admitted to probate June 9, 1902.    November 30, 1903, the probate court rendered a decree setting forth that there was in the hands of Enright, as executor of the will of Henry L., $8,473.72 in securities and money, decreeing such residue to Enright as executor of the will of Sarah W. to become a part of her estate, and ordering him as executor of the will of Henry L. to pay over and deliver such residue in accordance with the decree.

Enright filed in court no inventory of the estate of Sarah W., and filed no account of her estate.

At the time of this decree a part of the residue consisted of a deposit in the Windsor Savings Bank of an amount which, with interest accruing January 1, 1904, amounted to $1,617.31. This deposit stood in the name of Henry L. Story.    On the date last named Enright withdrew this deposit giving the treasurer of the Savings Bank a receipt signed as executor, and on the same day there was indorsed on a note held by the same bank, and signed by Enright and others, the exact sum of $1.617.31. The court finds that, if these facts warrant the finding, the Henry L. Story deposit was applied on the note of which Enright was one of the signers.

At the time of this decree a part of this residue consisted of a deposit in the Springfield Savings Bank of a sum, which with the interest accruing January 1, 1904, amounted to $1,368.87.    It stood in the name of Enright as executor of Henry L. Story's estate, and on the latter date Enright withdrew

that sum by giving the treasurer of the bank an order signed by him as executor of Henry L. Story's estate, and three days later he paid that exact sum on a personal obligation of his to the Windsor Savings Bank. The court finds that, if the evidence is sufficient to support the finding, the $1,368.87 drawn from the Savings Bank was disposed of by the payment of that identical sum on Enright's private obligation.

At the time of the decree a part of the residue covered by the decree was a deposit in the Ottaquechee Savings Bank, standing in the name of Enright as executor of H. L. Story's estate, of a sum, which with the interest accruing thereon on January 1, 1904, amounted to $1,322.75. This was drawn out by Enright, January 2, 1904. This amount was embraced in a check given by the bank, and this identical check was on the same day deposited in the Windsor Savings Bank to the credit of Enright, or rather to that of a firm of which he was a member.

At the time of the decree in question a part of the residue decreed was a deposit in the Bellows Falls Savings Bank standing in the name of Enright as executor of H. L. Story's estate. This deposit, with the semi-annual interest added January 1, 1904, amounted to $828.25. This was not disturbed until June 25, 1904, when by an order signed by Enright, in the character in which the deposit stood, he directed the Bellows Falls Bank to pay the amount of the deposit to the Windsor Savings Bank. Pursuant to the order a cashier's check, dated July 1, 1904, was sent to the Windsor Savings Bank, and a note executed by Enright upon which was due the sum of $2,320.13 was paid and taken up. A check for $1,545.32 in Enright's favor was received by the bank on the same day, and these two checks exceeded the sum due from Enright by $53.44. The exact sum of $53.44 was credited to Enright in his account with the bank. The court found that, if the evidence recited warranted the finding, the $828.25 went in to help pay Enright's note above mentioned.

The defendant objected to the evidence on which this finding was based, and to the evidence on which the similar findings, already referred to, were based, claiming that it was insufficient in each instance to support the finding; that the bare facts recited have no tendency to support the findings; that at most they give rise to a mere suspicion or guess. In each instance the court submits the question of the sufficiency of the evidence by saying that if it is insufficient it makes no finding as to the dis-

position of the respective sums drawn from the various banks mentioned. But in each instance the correspondence, to a cent, of the amount drawn and the amount contemporaneously applied to the benefit of Enright in his private character, was strong evidence to sustain the finding of the court.

Judicial reasoning upon evidence is not a peculiar and obscure mental process, and the force of the evidence upon which the court based its findings is obvious. *Barney* v. *Quaker Oats Co.*, 85 Vt. 372, 82 Atl. 113, 127.

That the precise correspondence of sums of money consisting of dollars and cents and represented by numerous figures may be proof of identity was very recently held. *American Surety Co.* v. *Gaskill's Admr.*, 85 Vt. 358, 82 Atl. 218, 219.

Any abuse of this process of inference is readily detected, as is seen by reference to *Hammond's Admr.* v. *Hammond,* 76 Vt. 437, 58 Atl. 724. There a long account consisting of numerous small items would have been barred by the Statute of Limitations if a credit of $1.20 for butter was evidence that the credit went in extinguishment of specific debit items and was not a general credit. The party interested to claim that the payment was specific found a charge of 25 cents for soda and 25 cents for sugar made about eight months before the credit of $1.20, and a charge of 70 cents for salt, dated nearly a month after the credit, and claimed that the credit of $1.20 extinguished these three items aggregating that amount made during transactions, extending over a period of about nine months, and ending about a month later than the time of the credit. Various combinations aggregating $1.20 could be made on the debtor side of the account, and there was one debit of exactly $1.20. The court held that there was no evidence that the butter for which $1.20 was credited was delivered in payment of any specific items and that it must be treated as a general credit. The strong good sense of the late Judge Start is well exhibited in his opinion in this case. The combinations relied on were as fanciful as the Baconian cryptogram or as a map of the constellations.

In regard to two of the transactions noted here it is claimed that there is no finding that the payments in question on Enright's notes were made by him, and it is further claimed that there is no evidence which would support such a finding, and attention is called to the fact that one of the notes had two signers. And it is claimed there is no evidence of knowledge on the part

of Enright of the payments on these notes.  But the evidence tending to show that the payments were made with money drawn by Enright from the various banks necessarily tended to show that the payments were made by or in behalf of him, and that they were so made is the obvious meaning of the findings.  So the facts show, as matter of law, a misappropriation of the funds in question, an appropriation or conversion of them by Enright to his own use.

But the defendant says that, if this is so, it does not tend to establish the liability of the defendant as surety for Enright on a bond given by him as executor of Henry L. Story's estate. The claim is that by the decree of the probate court, with reference to the residue of Henry L. Story's estate, the residue was transferred by operation of law to Sarah W. Story's estate, Enright being executor under the wills of both Henry L. and Sarah W., and it being his part both to pay and to receive.  This is the question chiefly argued.

The defendant's argument rests upon the common law doctrine applicable where an executor is, in a personal or representative capacity, a creditor of the estate of his testator.

In *Woodward* v. *Lord Darcy*, 1 Plowd. 184, which is entitled, "A report of the opinions of the justices of both benches," it appears that the question was several times argued.  It was claimed on the one hand that when a creditor takes upon himself an executorship he consents to remit what was owing him, and besides that an executor cannot pay himself by retaining the debt due him.  On the other hand it was said that it would be a hard case if an executor, by accepting the trust, should lose his debt, and in order to save it, must refuse the executorship and disappoint the desire of the testator that the administration should be carried on by his chief friend, whose debt, above all others, the testator must be presumed to have wished paid.  It was argued and held by all the judges that such a result would be derogatory to testaments, since it would deter creditors named as executors from acting as such, and that it would be dangerous to the souls of testators because, if a creditor took upon himself the charitable office of executor, a just debt due from the testator would forever remain unpaid.  But it was recognized that the executor's right of action was gone because of the character which he assumed, and so it was held that there was a "transmutation of property" by operation of law.  Brooke, Chief

Justice of the Common Pleas, author of Brooke's Abridgment, dissented from the conclusion.

In two recent English cases, the case in Plowden has been referred to, and a doubt has been expressed in one or both if what is there said about transmutation of assets is more than a statement of an argument. *In re Gilbert,* 1 Q. B. 285 (1898); *In re Rhoades,* 2 Q. B. 352 (1899).

Some passages in the case in Plowden are calculated to raise such a doubt. But on the whole it must be said that the case expounds with apparent relish both retainer by operation of law and transmutation of assets by the like operation. Everybody present seems to have participated in the decision for the reporter says of the result reached that "It was the clear opinion of all the justices of the one bench and of the other, except Brooke who was strongly of opinion against them, and it was the opinion of all the sergeants also, as well as of the rest of them, as of Catline, at last, who was of counsel for the plaintiff," the losing party.

Cases in general accord with that of *Woodward* v. *Darcy* are the following: *Fryer* v. *Gilbridge,* Hob. 10; *Wankford* v. *Wankford,* 1 Salk. 299; *Roskelley* v. *Godolphin,* T. Raymond, 483, 484; *Robinson* v. *Cumming,* 2 Atk. 409, 411.

The doctrine of transmutation of assets by mere operation of law gave, of course, the executor not only a preference, but a compulsory preference, and this was the intended result of it, and this was sometimes said to be the ground of it, and not the fact that the creditor was both the one to pay and the one to receive. Said Lord Chancellor Parker "anybody may make his creditor executor, and then the law gives him a preference; and not only so, but the law allows this executor to give any other creditor in equal degree a preference." *Cock* v. *Goodfellow,* 10 Mod. 496; 2 Eq. Cas. Abr. 100.

It was early said that equity will never assist a retainer. 2 Eq. Cas. Abr. 450, 451.

However, for a long time equity was not much adverse to the doctrine, for in 1715 it was said in *Waring* v. *Danvers,* in chancery, with regard to this matter, that where a creditor could gain an advantage at law equity should not deprive him of it and that he ought to keep it. Here the maxim that the laws favor the vigilant was invoked. In this case the executor had preferred himself and all the other creditors except the orator,

and it was held that the orator had no rights in equity. The Master of the Rolls, because the case was so hard a one, at first dismissed the bill without costs, but the matter did not rest there, and costs were afterwards allowed, and on appeal to the Lord Chancellor the decree dismissing the bill with costs was affirmed. *Waring* v. *Danvers,* 1 P. Wms. 295.

Previous to this decision, in the case of *Darston* v. *Earl of Orford,* the court of chancery following *Joseph* v. *Mott,* Prec. Ch. 79, had held that a voluntary preference of one creditor by an executor would not stand as against a creditor who had proceeded in chancery and procured an answer to his bill before the preference was made. But this moderate application of the principles of equity was not allowed to become the law, for Orford appealed to the House of Lords, where the decree of the court of chancery was reversed. *Darston* v. *Earl of Orford,* Prec. Ch. 188; same case, Colles, 229.

However, the doctrine of retainer by operation of law never obtained in this State. For a long time it was thought that the executor, or administrator, who had a claim, might elect to bring in his claim on his final accounting in the probate court or to present it to the commissioners. Note to *French* v. *Winsor,* 24 Vt. 402. And it at length became settled that if an executor, or administrator, had a claim against the estate which he represented the claim must be presented to the commissioners, or it was lost, and if presented and allowed it stood on a parity with other allowances of debts of the estate equal in degree. *Riley* v. *McInlier's Estate,* 61 Vt. 254, 17 Atl. 729, 19 Atl. 996.

For a time we had a statute providing that if an executor, or administrator, has a claim against the estate which he represents the probate court should appoint a special administrator to represent the estate in respect to that claim. Laws of 1888, No. 83; V. S. §2439.

And this statute as modified by an Act of 1896, now in force, provides that in case of such claim by an executor, or administrator, the probate court shall upon request of a person interested appoint a special administrator with reference to such claim. Laws of 1896, No. 43; P. S. 2827.

But at common law it was recognized that a legacy is not a debt, and in the case of a legacy to an executor the doctrine of retainer by operation of law did not apply. *Paramour* v. *Jordley,* 1 Plowd. 539, 543; *Attorney General* v. *Robins,* 2

P. Wms. 24, 25; *Fretwell* v. *Stacy,* 2 Vern. 434; *Heron* v. *Heron,* 2 Atk. 171; *Ashley* v. *Pocock,* 3 Atk. 208; *Cheney and Smith's case,* 1 Leon. 216.

In such cases the question was whether the executor had in fact made an election.

The defendant relies much upon *Taylor* v. *Deblois,* 4 Mason 131, a case in the circuit court decided by Mr. Justice Story, sitting as circuit judge. That was a case brought on the bond of an administratrix who was also guardian of children, and in that capacity entitled to distributive shares of the estate which she had administered. It appeared that she had certified to the probate court that she held the distributive shares as guardian and had obtained from that court a discharge as administratrix, *a quietus,* as it was called. The certificate and *quietus* were held to show that the funds in question were in her hands as guardian and that there was no liability on the administration bond. To this extent the opinion has since been regarded as sound law. But the justice was not content to rest the decision upon this ground alone but invoked the doctrine of retainer by a creditor who is executor, citing the case against Lord Darcy and the case in Hobart to which we have already referred, and ignoring the distinction between creditors of a testator and legatees, and saying that there was a transfer from her as administratrix to her as guardian by mere operation of law by way of retainer. But the justice shortly had an opportunity to set himself right and did so in the case of *Pratt* v. *Northam,* 5 Mason 95. There the same person was both administrator of an estate and guardian of children entitled to shares in the estate. The administrator collected assets sufficient to pay those whom he represented in his character as guardian, and it was claimed, that upon a decree of distribution of the estate, the funds passed to him as guardian instantaneously, by mere operation of law, without any election on his part. But it was held that this was not so. The case was against the sureties on the administration bond, and it was held that some act on the administrator's part constituting an election to hold the property as guardian and not as administrator might justly be insisted on before responsibility was shifted from sureties of one class to sureties of another. It was pointed out among other things that he had not charged himself in his guardian's account, and various circumstances were pointed out indicating that it was not his intention

to pass the funds to the guardianship account; and it was said that unless his intention was to do that the court could not direct it to be done. And it was held that the sureties on the administration bond were liable. The remarks made in the course of the opinion are not altogether consistent, for while the decision was entirely consistent with that rendered in *Taylor* v. *Deblois,* 4 Mason 131, there was some attempt to make the decision consistent with the *dictum* in that case, and that could not well be done.

Some time before these decisions of Mr. Justice Story, Chief Justice Marshall, sitting in the circuit court, had had the same question under consideration. There one who united in himself the characters of executor, and guardian of a legatee, had pursued a course which made it clear that he had elected to hold certain assets as guardian and not as executor, and because of his obvious election the Chief Justice held that he was chargeable in his character of guardian. *Alston* v. *Munford,* 1 Brock. 266, 278.

This case had not been reported at the time of the decisions in Mason's Reports to which we have referred. When the case came to be reported, the learned editor made a note carefully amplifying the views which the Chief Justice had expressed or intimated. The note is this: "The principle seems to be well settled, that where an executor or administrator, having assets in his hands, is also guardian of a legatee or distributee, he can elect to hold the share of that legatee or distributee, in his character of guardian, and thus exonerate the sureties in the administration bond and charge the sureties in the guardian's bond. But there must be some act from which the election to hold the property in a different character from that in which it was received may fairly be inferred, before the responsibility can be shifted from one class of sureties to another." In support of this doctrine, acted upon by the Chief Justice, the editor cites *Taylor* v. *Deblois,* 4 Mason 131, and *Pratt* v. *Northam,* 5 Mason 95, having regard to the decisions in those cases, and disregarding all remarks or intimations, in the opinions therein, that in cases of that sort there could be an automatic transfer of assets by mere operation of law. This note expresses the law as it has generally come to be understood. *In re Scott's Account,* 36 Vt. 297; *In re Gilbert,* 1 Q. B. 285 (1898); *In re Rhoades,* 2 Q. B. 352 (1899); *State* v. *Whitehouse,* 75 Conn. 410, 53 Atl. 897;

*Potter* v. *Ogden,* 136 N. Y. 384, 33 N. E. 228; *Newcomb* v. *Williams,* 9 Met. 525, 534; *Cranson* v. *Wilsey,* 71 Mich. 356, 39 N. W. 9; *Wilson* v. *Wilson,* 17 Ohio St. 150, 91 Am. Dec. 125; *Cluff* v. *Day,* 124 N. Y. 195, 26 N. E. 306; *Prior* v. *Talbot,* 10 Cush. 1; *State* v. *Branch,* 134 Mo. 592, 36 S. W. 226, 56 Am. St. Rep. 533.

The mere decree of distribution did not change the character in which Enright held the assets in question. He filed no inventory of Sarah W. Story's estate, he filed no account as her executor, and did no act manifesting his election to hold the funds in question as assets of her estate. He diverted such assets from their proper channel and appropriated them to his own use. These facts rebut any presumption of a transfer from one estate to the other in accordance with the order of the court, and together with the other facts in the case fixed liability upon the defendant on his bond to secure the discharge of the duties of Enright as executor of the estate of Henry L. Story.

In *Pratt* v. *Northam,* 5 Mason 95, Mr. Justice Story, in reaching the conclusion that the liability of the sureties on the administration bond had not been shifted to the sureties on the guardianship bond, said that he could not but have a strong suspicion that the intention of the administrator was to appropriate the assets to his own use. The equivalent of what was suspected there is here found, and more is found, for the findings show that the executor here did appropriate the funds to his own use, which is a finding both of intent and its accomplishment.

Other questions shown by the bill of exceptions are not here relied on by the defendants, and so are passed without notice.

*Judgment affirmed.*