76 U.S. 554
 19 L.Ed. 584
 9 Wall. 554
 UNITED STATES
v.
ADAMS.
 December Term, 1869
 
 ON motion to amend a decree of this court affirming a decree of the Court of Claims, stay, mandate, &c. The case was thus:
 Adams filed, some time since, a petition in the Court of Claims against the United States, claiming $112,748 for certain mortar-boats, tug-boats, cabins, pilot-houses, and other work, furnished by order of General Fremont in the Western Military District, during the summer of 1861. One of the defences relied on by the United States against it was, that the government had appointed a board of commissioners to hear and determine this claim among others; that in December, 1861, the petitioner had presented it before that board, who after having heard the same, adjusted his accounts, and awarded a balance due him of $95,655, which he had been paid by the government, giving a receipt for the sum in full of all demands. It was not denied by himself that he had received this money; nor by the government that he had received it only under protest.
 The Court of Claims gave a decree in favor of his claim, and the United States appealed.
 A rule of this court regulating appeals from the Court of Claims prescribes, in respect to the way in which that court shall prepare and certify its record to this court for review, that it make 'a finding of the facts in the case, and the conclusions of law on the facts on which the court founds its judgment or decree; the finding of the facts and the conclusions of law to be stated separately, and certified to this court as part of the record.' In accordance with this rule the Court of Claims, on the appeal by the United States from its decree, did find and certify as part of the record, the facts; stating among them 'that in December, 1861, the petitioner presented to said commission his claim for said mortar-boats, tug-boats, cabins, &c., in two accounts, setting forth the same.'
 The appeal was elaborately and ably argued at the last term by Mr. Hoar, Attorney-General, and Mr. Dickey, then Assistant Attorney-General, for the government-they arguing that the settlement and receipt of the money upon the basis of a quantum meruit (which they endeavored to show was the basis on which Adams had received his money), precluded the assertion of the claim made in the Court of Claims—and by Messrs. Carpenter, Carlisle, Corwine, and Wills, contra; who contended that the receipt which had been given, was no bar to the claim.
 This court on the appeal reversed the judgment of the court below, giving an opinion which can be seen in the report of the case in 7th Wallace.* The main ground of that opinion was thus presented:
 'In the view we have taken of the case, the giving of this receipt is of no legal importance. The bar to any further legal demand against the government does not rest upon this acquittance, but upon the voluntary submission of the claims to the board; the hearing and final decision thereon; the receipt of the vouchers containing the sum or amount found due to the claimant; and the acceptance of that amount under an act of Congress providing therefor.'
 The court, in that opinion, agreed that the creditors of the government were not bound to present their claims before that board, but might withhold them, and, as the Secretary of War had refused to recognize them, seek relief before Congress or the Court of Claims.
 The counsel of Adams—now filing his affidavit to the effect that the finding of fact sent up by the Court of Claims, as part of the case, was not true, but was erroneous; that the petitioner did not present his claim before that board, but, on the contrary, that the accounts were referred to it by General Meigs, at the head to the bureau, before whom this class of accounts had to be presented for adjustment; that it was heard ex parte; and that the materiality of this fact had been discovered since the delivery of the opinion, above mentioned, of this court reversing the judgment of the Court of Claims—moved to amend the decree of this court, reversing the decree of the Court of Claims; and to stay the mandate, in order to enable Adams to obtain a correction of the record from that court, and that the cause might be again heard.
 The ground of this motion was, of course, that the record from the Court of Claims was erroneous in a material fact stated in it, and upon which it was supposed that this court mainly placed its judgment of reversal.
 It appeared from the affidavit of the appellee, in support of the motion, that this error in the record was observed by him, and known to his counsel, at the argument on the appeal; but that no steps were taken to have it corrected, their belief having been that the action of the board of commissioners could have no binding effect upon the rights of the claimant.
 Such substantially, as the court regarded it, was the case as now before it.
 But there were certain other facts in the matter which it thought fit also to refer to. They were these: Accompanying the petition and affidavit of Adams, was the original record of the evidence before the Court of Claims. The Secretary of War, in October, 1861, as it showed, suspended the payment of the present claims, among many others originating in the then Western Military District, upon charges of fraud alleged against them, and appointed a board of commissioners to hear and pass upon the same before payment. After the appointment of this board, and when General Meigs was pressed to pay this claim, with others, he constantly advised the claimants that the claims must be heard and adjusted before the board, and, until then, they would not be recognized or paid; and, on the 4th January, 1862, the papers upon which the claims of Adams were founded were, by direction of the General himself, placed before the board, with a request to hear and determine the amount justly due.
 This step, taken by General Meigs, was well known to the appellee, who was present in St. Louis at the time, where the board sat. It was true that there was no proof in the record to show that he presented his claims before the board, or that he procured any witnesses to appear before them in the course of their investigations. Four witnesses were examined on the part of the government on the subject of the reasonableness of the prices charged for the mortar-boats, gun-boats, and other work. They proved, if not mistaken, a considerable overcharge in the work and materials. No witnesses were produced on the part of the appellee, nor were those on the part of the government cross-examined; but, on the 13th of January, 1862,** he addressed a letter to the board, dated at St. Louis, expressing a desire to submit to them some facts in relation to the construction of the mortar-boats, which constituted the principal item in his accounts. In that letter he states the history of his communications with the Navy Department and with General Meigs on the subject of his plans for the construction of the mortar-boats, and of the adoption of the same by General Fremont, and of the contract for building the same, and closes it by saying that 'when this contract was made, I supposed I would have to pay much higher for materials and labor than I have, and, therefore, the job has been more profitable in figures than I expected. To do this work I had to contract debts to workmen and all classes who have furnished me materials; and claim, as I have in no respect been remiss on my part, the government should deal promptly and liberally with me.'
 As mentioned in the earlier part of the reporter's statement, the board of commissioners adjusted Adams's accounts and allowed a balance due to him of $95,655, for which he accepted a voucher and gave a receipt in full; accepting payment of the same under a resolution of Congress, passed soon afterwards, for the payment of claims audited and allowed by this board of commissioners.
 Messrs. Wills and B. R. Curtis, in support of the motion.
 The Attorney-General, Mr. Hoar, contra.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 The court is of opinion that a case has not been presented by the appellee, which would justify it in the exercise of its equitable powers to grant this relief.
 
 
 2
 The second rule of this court on appeals from the Court of Claims, in respect to making up the record, is as follows: 'A finding of the facts in the case by the said Court of Claims, and the conclusions of law on the facts on which the court founds its judgment or decree. The finding of the facts and the conclusions of law to be stated separately, and certified to this court as part of the record.'
 
 
 3
 The remedy, in case the Court of Claims falls into a mistake as to the finding of the facts, is familiar. It is by an application to this court to remit the case back for correction, if it be shown, satisfactorily, that a mistake has been committed.
 
 
 4
 In the case before us, it is admitted that the mistake was known to the party and his counsel in season to have had it corrected before hearing; but, relying on its immateriality, no step was taken to have the correction made. We do not doubt but that this opinion was honestly entertained, and that this motion is made in good faith; but it is impossible not to see that, if granted, the precedent might lead to great abuse and delay in the hearing of these cases. We should allow either party to lie by till the cause was decided, and the opinion delivered, and then to apply for the correction, as the exigency of the case might require, or as the materiality of the fact might appear from the ground upon which the decision was placed. On an appeal, the parties are entitled to have all the facts proved in the case before the court below, in the judgment of the court, truly found, and stated in the record, that either deemed material to the decision; and, as we have seen, the remedy is ample to correct any mistakes committed, if applied for prior to the hearing in this court. The court are not willing to go farther, and permit the remedy to be applied after the case is heard and decided, as we fear that such a precedent would work greater injustice and hardship, in its general use and application, than that which may exist in any particular case.
 
 
 5
 There is another view also, arising out of the facts upon which this motion is founded, which should be stated. Although it is true that the appellee did not present his claims before the board, as stated in the finding in the record on appeal, it cannot, in view of the facts which appear in the original record of the evidence before the Court of Claims,*** well be denied but that he made himself a party to their proceedings, and took the benefit of the adjustment of his accounts by them, which brings the case within the principle decided in 7th Wallace.
 
 
 6
 MOTION DENIED.
 
 
 
 *
 Page 463.
 
 
 **
 The date as given in the record was 1861, but this manifestly was an error.
 
 
 ***
 Given, supra, p. 557, in the latter part of the reporter's statement, beginning with the sentence, 'Accompanying the petition,' and ending with the words (foot of p. 558), 'allowed by this board of commissioners.'—REP.