J. H. PARKER v. McKANNON BROS. & Co.

October Term, 1903.

Present: ROWELL, C. J., TYLER, MUNSON, WATSON, and STAFFORD, JJ.

Opinion filed December 2, 1903.

*Contract—Breach during term of—Damages—Prospective*
*—Evidence.*

When parties, who have agreed that for a definite time, which has
not yet expired, they will take and sell instruments made for
them by another, refuse to take any more instruments, and the
other is ready and offers to deliver, the latter may treat the con-
tract as absolutely and finally broken.

In an action for breach of such a contract, both past and prospective
damages may be recovered.

Immediately upon breach of such a contract a right of action ac-
crues to the plaintiff, although he has then suffered no damage.

As bearing upon the value of such a contract to the plaintiff, evidence
is admissible showing the cost of the instruments made under
the contract, what portion of the cost was labor, how many in-
struments plaintiff could make per week, his business since the
breach, and whether he could furnish instruments till the con-
tract expired.

Questions, which the exceptions do not show were raised in the court
below, will not be considered in the Supreme Court.

SPECIAL ASSUMPSIT upon a written contract. Plea, the
general issue, with notice of special matter. Said notice
has not been furnished the reporter. Trial by jury at
the March Term, 1903, Chittenden County, *Start,* J., presid-

ing.    General and special verdicts for plaintiff.    Defendants'
motion to set aside verdicts overruled.    Judgment *pro forma*
on verdicts.    The defendant excepted.

The contract declared upon was executed by both plain-
tiff and defendants, was dated October 30, 1899, and pro-
vided, among other things, that the plaintiff should make and
furnish to the defendants, exclusively, at their store in Bur-
lington, a certain musical instrument known as the Parker
Bandola, of which plaintiff was the patentee; that the de-
fendants were to pay the plaintiff for such instruments, as
they were delivered, the actual cost of manufacturing the
same, which was fixed at four dollars and twenty-five cents
and upwards for each instrument, according to finish; that
plaintiff was to furnish these instruments as fast and in such
quantities as the trade should demand, but the defendants
were to take at least three instruments each week, if plaintiff
should so desire; that defendants were to take these instru-
ments so furnished, and sell them on the market in the same
way as they sold other musical instruments in which they
were dealing, for which they were to have the actual reason-
able expense incurred in so selling, and the remainder of the
proceeds of such sales was to be equally divided between the
plaintiff and the defendants.    This contract was to continue
in force for five years, with the option on the part of the de-
fendants, for another five years after the expiration of the
first five years.

The evidence of the plaintiff tended to show a subse-
quent modification of this written contract, by which the
material for the manufacture of these instruments was to be
furnished by the defendants, and the price to be paid the
plaintiff by the defendants was to be reduced, on account of

the cost of this material, to three dollars per instrument, which represented the cost of manufacture, exclusive of material.

The plaintiff's evidence tended to show that in June, 1900, after he had made and delivered sixty-six instruments, the defendants refused to take any more instruments made by him under said patent, though the plaintiff was ready to deliver and in fact tendered more instruments.

The plaintiff's evidence also tended to show the market price of, and the profits on, the instruments sold, and that the defendants never divided the profits.

The defendants' evidence tended to show that the plaintiff represented to them that his instrument was a new and valuable invention, and that no instrument embodying his claimed improvement had ever before been made or patented; that they soon discovered that the plaintiff's instrument was an infringement of a certain patent held by one Pollman, and that the plaintiff's claimed improvement had been known and used by others for more than two years prior to his application for his said patent; that they notified plaintiff of these facts and told him that they should not go on under the contract, having been notified by said Pollman to desist, and that plaintiff acquiesed in the abandonment of the contract.

The defendants objected to the testimony of the plaintiff as to the cost of making the instruments, as to what portion of such cost was labor, and as to how many he could make per week, and excepted to the ruling of the court admitting such testimony.

The plaintiff testified as follows, subject to the objection and exception of the defendant:

Q.   You may state whether, considering the amount of teaching and instruction which you have to do, you could fur-

nish the defendants now, and until the time the contract expires, three instruments each week?

A.   At present I could, and for some time I could do that.   Of course, that depends entirely on how much teaching I would have.

Q.   You may state whether you could furnish three each week until the expiration of the five year period, if things remain as they are now?   A.   Yes, sir.   Q.   You may state whether or not you are ready to do so?   A.   Yes, sir.

There was no other testimony upon this point, except as plaintiff's testimony as to the number of instruments he had been able to furnish up to the time of trial, tended to show his ability to furnish to the end of the contract period.

To the ruling of the court permitting the plaintiff to demonstrate by sounding, the difference between the tone of his instrument and that of the Pollman instrument, and also permitting the plaintiff to testify that such difference in tone was due to the difference in the shape of the instruments, the defendant excepted, but the exceptions do not show that the question of whether plaintiff was an expert was raised.

The court instructed the jury that if they found for the plaintiff, they should include in their general verdict damages from the time the contract was terminated by its breach to the time of trial, March 15, 1903.   To this defendants excepted, claiming that no damage could be recovered which plaintiff suffered since suit was brought.

The jury returned a general verdict for the plaintiff for the sum of $740.50, and also the two following special verdicts:

(1)  "Q.   What sum have you included in your verdict for damages sustained by the refusal of the defendants to re-

ceive and pay for instruments between August 2, 1900 (date of writ), and March 5, 1903, (time of trial)?

A. We have included $740.50, as damage for refusal to receive any more instruments."

(2) "Q. What damages do you find the plaintiff will sustain between the fifth day of March, 1903, and the thirtieth day of October, 1904, by reason of the refusal of the defendants to receive and pay for any more instruments?

A. $387.00."

The defendants moved to set aside the verdicts for the reasons given in the opinion. The court overruled this motion, and rendered judgment *pro forma* for the plaintiff to recover the amount of the general verdict and the amount of the special finding, and costs, to which defendant excepted.

*V. A. Bullard* and *W. L. Burnap* for the defendants.

It was error to direct the jury to include in their verdict damages accruing after suit brought, or to give judgment for damages found to have thus accrued, or for prospective damages. This is an instalment contract,—no instalment being in any way dependent or related to the other,—running through a period of five years. Damages should have been limited to the time suit was brought. Future damages are the subject of future investigation and determination, when all the factors are available for estimating same. The record shows that there was no definite evidence upon which such assessment could be made. Whether plaintiff could meet the terms of the contract, is uncertain, remote, and speculative, as the record shows. 5 Vt. 181; *Spear* v. *Stacy,* 26 Vt. 61; *Whipple* v. *Fair Haven,* 63 Vt. 226; 4 Pick. 107.

The verdict finds that all damage accrued after suit brought; this is equivalent to finding that the suit was brought upon a claim which at that time had no foundation.

*R. W. Taft* and *E. C. Mower* for the plaintiff.

Upon breach of this contract the plaintiff might treat it as rescinded, and at once bring an action for damages; or he might treat the contract as continuing, and sue for breach thereof; or he might defer suit until the end of the term and sue for the actual damage he had sustained. No matter which of these he elected, his action would have been one for damages. *McMullan* v. *Dickson Co.,* 51 Am. St. Rep. 511; *Hamilton* v. *Love,* 152 Ind. 641; 71 Am. St. Rep. 384.

Prospective damages may be recovered in such suit. *Cutter* v. *Gillette,* 163 Mass. 95; 8 Am. & Eng. Enc. (2 Ed.) 651; *Wakeman* v. *Wheeler, etc. Co.,* 54 Am. Rep. 676; *Remelee* v. *Hall,* 31 Vt. 582.

WATSON, J.   The contract between the plaintiff and the defendants was dated October 30, 1899, and was for a term of five years.

The verdict has established that in June, 1900, the defendants refused to take any more instruments made by the plaintiff under his patent, though the plaintiff was ready to deliver and in fact tendered more to them. This was such a breach of the contract by the defendants as gave the plaintiff the right to treat the contract as absolutely and finally broken. The plaintiff elected so to treat it and brought this action for damages.

That upon such a breach of a contract damages may be recovered for a non-performance of the whole contract, that is, prospective as well as what had already been sustained at the time of the commencement of the suit, was laid down by this court in *Royalton* v. *Royalton and Woodstock Turnpike Co.,* 14 Vt. 311, and again in *Remelee* v. *Hall,* 31 Vt. 582. Hence the question must be considered as settled in this State. See

also *Pierce* v. *Tennessee Coal, Iron & Railroad Co.*, 173 U. S. 1, 43 L. Ed. 591; *Cutter* v. *Gillette*, 163 Mass. 95, and *Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205, 54 Am. Rep. 676.

Nor are the cases of *Waterman* v. *Buck*, 58 Vt. 519, 3 Atl. 505, and *Whipple* v. *Fairhaven*, 63 Vt. 226, 21 Atl. 533, relied upon by the defendants, in conflict therewith. In *Waterman* v. *Buck*, the orator brought his bill for an injunction to restrain the defendants from depositing sawdust and waste in a certain stream, whereby the orator's meadow was damaged, and for damages. It was held that damages accruing subsequent to the bringing of the bill could not be considered because not brought upon the record by supplemental bill.

In *Whipple* v. *Fairhaven*, the orator sought an injunction restraining the defendant from maintaining a certain culvert, and for damages already suffered by the orator by reason of the discharge of water through the culvert upon his premises. The report of the case does not show that the pleadings stood differently from those in *Waterman* v. *Buck*, and it was held, upon the authority of that case, from which it was said not to be distinguishable in principle, that nothing could be recovered for damages done after suit brought.

The value of the contract to the plaintiff at the time of the breach was shown by assessing the entire damages. As bearing upon that question, evidence showing the cost of the instruments under the contract, what portion of the cost was labor, how many instruments the plaintiff could make per week, the work or business in which the plaintiff was engaged during the time between the bringing of the suit and the trial, and whether he could furnish instruments according to the contract thenceforth to the expiration of its term, was properly received; for it was legitimate to show the nature of the con-

tract, the circumstances surrounding and following its breach, and the consequences naturally and plainly traceable to it. *Wakeman* v. *Wheeler & Wilson Co.* before cited.

The defendants introduced expert testimony in defense tending to show that there was no patentable difference between the plaintiff's instrument and the Pollman instrument. To meet this evidence, the plaintiff, in rebuttal and subject to defendants' exception, was permitted to testify and "demonstrate" by sounding, the difference between the tone of his instrument and that of the Pollman instrument upon which defendants' evidence tended to show the plaintiff's instrument was an infringement, and was also permitted to testify that the difference in tone was due to the difference in the shape of the instruments. It is argued that this was permitting the plaintiff to testify as an expert, to do which he was not competent. But the exceptions do not show that the question of his competency was raised in the trial court, hence it is not for consideration here.

In submitting the question of damages to the jury, in case their verdict should be for the plaintiff, the jury were instructed to return a general verdict for the amount of damages found covering the period up to the time of the trial. Also to state as a special finding what sum they had included in the general verdict, for damages sustained by the refusal of the defendants to receive and pay for instruments between the time of the commencement of the suit and the time of the trial. The amount of damages specified in the general verdict and in the special finding so made were the same.

The jury also found specially the amount of damages for the period between the time of the trial and the expiration of the term of the contract.

The defendants moved to set aside the verdict and award a new trial on the ground that the verdict was so uncertain,

inadequate, irregular, ambiguous, defective and illegal that no judgment could be legally rendered thereon. This motion was overruled and judgment rendered *pro forma* for the plaintiff to recover the full amount of damages named in the general verdict and in the special finding, to which the defendants excepted.

It is urged that by one of the special findings it appears that the plaintiff had suffered no damages by reason of the breach of the contract before the commencement of this suit, which, it is contended, is equivalent to a finding that the suit was brought upon a claim at that time without foundation. But this position is untenable, for upon the breach of the contract the plaintiff's right of action accrued. *Emack* v. *Hughes,* 74 Vt. 382, 52 Atl. 1061.

*Judgment affirmed.*