AMERICAN SURETY COMPANY OF NEW YORK *v.* VARNEY A.

GASKILL'S ADMR.

January Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 20, 1912.

*Evidence—Entry in Private Cash Book—Admission in Official Capacity — Special Administrators — Extent of Liability — Liability of Surety.*

An entry made by a person in his private cash book of cash received from a town order that is identified as the property of an estate of which he was then special administrator, is an admission of the receipt of money for which he is accountable, and so is admissible against the surety in an action on the bond of such special administrator.

The fact that a certain obligation which, on a given date, has run a number of years, months, and days, if figured to that date at a probable rate of interest, corresponds exactly with a book entry then made of cash received as the proceeds of a like obligation, is some evidence of the identity of the obligation evidenced by the entry.

Where a special administrator is not otherwise connected with the administration, he cannot relieve himself of the trust by any turning over of the property before the appointment of an executor or administrator, and where the special administrator is also named in the will as executor, the final establishment of the will does not in itself terminate the trust as special administrator.

Where the appointment to an office is for a limited period, which is recited in the condition of the official bond, or, if not recited, is fixed by law, the liability on the bond will be confied to such period, although the language of the condition is general and unlimited.

Where there is an appointment to a permanent office having a definite and limited term, general words contained in the condition of the official bond will not extend the obligation of the surety beyond the term for which the appointment is made, though there be a statutory provision continuing the appointee in office beyond the term in default of a successor.

The surety on the bond of a special administrator remains liable until the trust is terminated and he has rendered his final account, unless discharged as provided by P. S. 3022, and so, where a special administrator continued to act as such after the final establishment of the will,

which named him as executor, the surety on his official bond remained liable.

APPEAL IN CHANCERY.   Heard on the pleadings and finding of facts by the Chancellor, at the March Term, 1910, Rutland County, *Taylor*, Chancellor.   Decree dismissing the bill with costs to the defendant.   The orator appealed.

The bond referred to in the opinion was executed by the orator, as surety, and Joel C. Baker, as principal, to the probate court, in conformity with the requirements of section 2760 of the Public Statutes, in the sum of $2,000, conditioned that the said Baker, special administrator during the delay caused by appeal from the allowance of the last will and testament of the said Varney A. Gaskill, should make and return to said probate court, within three months, a true and perfect inventory of the goods, chattels, rights, and credits of the estate of the said Gaskill which should come to his possession or knowledge, or to the possession of any other person for him, and should well and truly administer the same, and pay and deliver the same to the person thereafterwards appointed executor or administrator, or person authorized to receive the same, and charges chargeable therein, or such dividends thereon as should be ordered and decreed by said court, render a true and just account of his administration to said court within a year, and at any other time when required by said court, and perform all orders and decrees of said court by him to be performed in the premises, then "this obligation to be void; otherwise of full force."

On December 9, 1907, defendant brought suit in the name of the probate court against the orator to recover for alleged breaches of said bond; and the orator brings this suit to restrain the prosecution of that, on the ground that certain items charged Baker in his account as special administrator were improperly included therein, and that the allowance of that account as filed by Baker's administrator has wrought a fraud on the orator.

*T. W. Moloney* for the orator.

*John S. Buttles* for the defendant.

Munson, J. An appeal having been taken from the allowance of an instrument presented to the probate court for the district of Rutland as the last will and testament of Varney A. Gaskill, Joel C. Baker, the person named in the will as executor was appointed special administrator of said Gaskill's estate, and gave the bond required of him as special administrator, and entered upon the duties of his appointment. This bond, the condition of which is given in full in the statement of the case, was executed by the orator, the American Surety Company of New York, as surety for said Baker, and was dated July 14, 1898. On the 24th day of April, 1899, a judgment of the county court allowing the will was duly certified to the probate court. It does not appear that letters of administration or letters testamentary were issued by the probate court after this allowance during Baker's life-time. Baker died intestate on the sixth day of June, 1904, without having settled his account as special administrator, and without having filed any account of his administration of the estate. H. O. Carpenter was appointed administrator of Baker's estate June 13, 1904, and George L. Howe, the defendant herein, was appointed administrator *de bonis non* with will annexed of Gaskill's estate December 15, 1904. On the fifth day of December, 1905, Carpenter rendered Baker's account as special administrator of Gaskill's estate, showing a balance in Baker's hands of $1,382.73; and the probate court approved the account, and ordered this balance paid to the defendant as administrator *de bonis non* of the Gaskill estate. The only issue of fact raised by the pleadings relates to an item of $1,192.36, which appears on the debit side of this account under date of Nov. 6, 1899. The chancellor has found that Mr. Baker received this sum as special administrator of Gaskill's estate, and that it was properly charged to him in his administration account. The orator excepted to this finding on the ground that there was no evidence to support it.

It appears from the chancellor's findings that on the first day of January, 1896, one Lizzie Mead loaned the town of Mt. Holly one thousand dollars and took a town order therefor. In November of the same year she bought a house of Mr. Gaskill and gave him this town order in part payment. Gaskill left a widow, who died in November, 1906. Shortly after Gaskill's

death, and before Baker's appointment as special administrator, this order was in Mrs. Gaskill's posesssion. Mr. Baker kept what purports to be an account with the Gaskill estate, and charged himself therein with cash received from certain banks, and credited himself with disbursements on account of the estate. He did not charge himself in this account with the proceeds of said town order, but under date of November 6, 1899, he entered on his cash book, "Cash town Mt. Holly, $1,192.36." A transcript of the testimony is referred to for the purpose of showing the evidence on which the disputed question of fact is found; and it appears from this that Mr. Howe testified that he had made a full examination of all Baker's books to ascertain if there was any transaction other than the Gaskill matter to which this entry could refer, and that he found nothing. It appeared that Mr. Baker had done much legal business for Mt. Holly, and his accounts with the town from 1888 to 1903 were introduced and accompany the transcript; and these tend to corroborate the testimony of Mr. Howe. The chancellor says that he is satisfied from the circumstances that the cash Mr. Baker received from the town of Mt. Holly, November 6, 1899, was the proceeds of the town order held by Mr. Gaskill; and that he is confirmed in this view by the fact that the Mead order, with interest at five per cent, would amount on that date to the exact sum received by Baker.

It is objected that the entry itself was not admissible against the orator, because it was an admission of Mr. Baker in his private capacity and not as administrator. We apprehend that this entry on his private cash book stands the same as if it were an oral statement of like import made to one called as a witness. With evidence of the identity of the payment, it was an admission charging him with the receipt of money for which he was accountable to the estate; and being evidence that would have been admissible against him in an accounting as administrator, it was admissible against his surety.

There was evidence tending to identify the cash received as money paid on the Mead order. The entry made by Mr. Baker is the only thing it is necessary to refer to. It is said that the inference drawn from the amount of the entry is not justified in the absence of evidence that the order was drawing

five per cent interest. But we think that when an obligation which has run years, months and days produces, if figured at a probable rate of interest, a result which corresponds to a cent with an entry of cash received from the obligor, the coincidence affords some evidence of identity.

But the orator's main contention is that Mr. Baker received this money after he had ceased to be special administrator, and after the expiration of the period to which its obligation was limited. This will necessitate an examination of the statutory provisions relating to the appointment and duties of special administrators and the determination of their trusts.

When a delay in granting letters testamentary or of administration is occasioned by an appeal from the allowance or disallowance of a will, as from other cause, the probate court may appoint an administrator to act in collecting and taking charge of the estate until the questions causing the delay are decided and an executor or administrator is thereupon appointed. P. S. 2777. The special administrator is required to collect the goods, chattels and credits of the deceased, and preserve the same for the executor or administrator afterwards appointed; and the probate court may upon his application appoint commissioners to allow claims against the estate, but such administrator will not be liable to an action by a creditor or to pay any debts of the deceased. P. S. 2778, 2779. A special administrator is required to give a bond, conditioned that he will make and return a true inventory of such estate as may come to his possession or knowledge, and will account for such estate as is received by him when required by the probate court, and will deliver the same to the person afterwards appointed executor or administrator. P. S. 2780. Upon the granting of letters testamentary or of administration the powers of the special administrator cease, and he is to deliver forthwith to the executor or administrator the estate in his hands. P. S. 2781. When a will has been proved and allowed, the probate court is to issue letters testamentary thereon to the person named therein as executor, if he accepts the trust and gives the required bond. P. S. 2757. A person so named who refuses to accept the trust, or neglects to give a bond for twenty days after the probate of the will, is forbidden to intermeddle or act as executor, and

letters of administration with the will annexed may be granted. P. S. 2763.

It is clear that when the person appointed special administrator is not otherwise connected with the administration, he cannot relieve himself of the trust by any turning over of the property until the executor or an administrator with the will annexed is appointed. In this case the person holding the property as special administrator was the one entitled to be appointed executor and liable to be set aside if he did not accept the appointment within twenty days. In ordinary course Mr. Baker, within a reasonable time after the certificate of allowance was filed, would have qualified as executor, and have rendered his account as special administrator, and thus have become holden as executor for the balance found in his hands. The facts that he was named in the will as executor and that the will had been finally established were not in themselves. sufficient to terminate his trust as special administrator. Their effect upon the security afforded by the bond is another matter, and requires further consideration.

There is an abundance of authority upon the construction of official bonds where the principals were appointed for a definite term and the obligatory words extended beyond the term. It is well settled that when the appointment is for a. limited period, which is recited in the condition of the bond, or if not recited is fixed by law, the liability will be confined to the period named in the condition or fixed by law, although the language of the condition is general and unlimited. *State Treasurer* v. *Mann*, 34 Vt. 371, 80 Am. Dec. 688. It is equally well settled that when the term of an office is declared to be annual, a further provision that the incumbent shall remain in office until his successor is appointed will not take the case out of this rule. See *First National Bank* v. *Briggs, Assignees*, 69 Vt. 12, 37 Atl. 231, 60 Am. St. Rep. 922, 37 L. R. A. 845; and for different applications of the rule in such cases see authorities there cited. It has also been held that the recital of an appointment in the condition of a bond will charge the signers of the bond with knowledge of the extent of the appointment, and that general words will not extend the liability beyond the term of the appointment thus recited, although the extent of

the appointment is neither given in the recital nor fixed by law. *Kitson* v. *Julian,* 82 E. C. L. 854; and see case last cited.

It is clearly the doctrine of this line of cases that when the appointment is to a permanent office having a definite and limited term, the obligation of the surety will not be extended beyond the term for which the appointment is made by general words contained in the condition of the bond, even though there is a corporate or statutory provision which continues the appointee in office beyond the term in default of a successor. In this case there is no definite term of office, nor appointment for a definite time. The appointment, as stated in the bond, is to continue during the delay caused by the appeal. The delay that will be caused by an appeal, whether it be treated as terminated by the filing of a certificate of allowance or by the appointment of an executor, is always and necessarily of uncertain duration. It may be months, and it may be years, before the contest over the will is terminated; and after the final decision has reached the probate court there may be various necessary delays in complying with the requirements of the statute relating to the termination of the trust. The orator contends that the "delay caused by the appeal" comes to an end as soon as the certificate of allowance is filed; but this construction of the phrase cannot be adopted without excluding from the operation of the bond the subsequent delays which occur in many cases as a direct result of the appeal. If an executor is named in the will he is entitled to twenty days in which to give a satisfactory bond, and may be allowed a longer time in the discretion of the court. If no executor is named in the will, letters of administration with the will annexed are to be granted to the person entitled thereto under statutory provisions which determine the order of preference and the extent of the court's discretion. In a case of this kind, there may be a prolonged contest in the probate court as to the person entitled to the appointment. If we were to look solely to the expression, "during the delay caused by the appeal," it would be difficult to limit the liability of the surety to the period preceding the filing of the certificate of allowance.

Mr. Baker received this money six months after the will was allowed, but he continued to act without further appointment until his death five years later. If the return of the cer-

tificate is not made the limit of liability, no satisfactory limit can be found short of the termination of the trust; and it may be suggested that the possibility of an indefinite prolongation of the trust, like that under consideration, argues strongly for a holding which will make the return of the certificate the limit of the period during which the surety can be charged by any further act of the principal.  But this bond is given under a statutory system which provides for the settlement of estates and the security of interested persons during the settlement, and a provision for the relief of sureties is one of the features of this system.  If a surety on a probate bond considers himself in danger of being injured by a continuance of his obligation, he can at any time petition the probate court for an order requiring his principal to settle his account and give a new bond, and secure his removal in default of a compliance with such order.  P. S. 3022.  The purpose and language of the sections first above recited are inconsistent with the idea of an intermediate period during which the estate will be held without security; and this last provision confirms us in the conclusion that the surety of a special administrator remains liable until the trust is terminated, unless otherwise discharged.

But there is a further consideration which seems to put the matter beyond doubt.  The whole purport of the bond is to secure the faithful performance of the duties of the principal under his appointment, including the rendering of accounts and a compliance with the decrees of the court.  By the terms of the statute, the delay caused by the appeal is the occasion of the appointment, but not the limit of it.  The special administrator is appointed to act "until the questions causing the delay are decided and an executor or administrator is thereupon appointed."  It is this part of the section which expresses the duration of the delay which in its inception was the cause of the appointment.  The orator is charged with knowledge of the entire provision; and it will be held to have intended by the language of its obligation the limit of the appointment as given in the statute, and so will be held liable for the full execution of the trust as completely as if the whole provision were recited in the condition of the bond.

*Decree affirmed and cause remanded.*