MAUDE R. HATFIELD, EXECUTRIX, ET AL., APPELLANTS, V.
WILLIAM E. JAKWAY ET AL.: NIELS P. HANSEN, APPELLEE.

FILED DECEMBER 14, 1918.    No. 20026.

1. **Appeal**: BILL OF EXCEPTIONS: CORRECTION.   When counsel presents
a bill of exceptions to the adverse party and the court for ex-
amination and settlement, he vouches for its correctness, and,
when the court by allowance makes it a part of the record, it
imports verity.   After being filed in this court, it can only be
corrected by being withdrawn by leave of court for correction in
the district court.

2. ———: ———: ———.   Such a motion ordinarily comes too
late after the case has been argued and submitted and the opin-
ion handed down, and this is especially so, when the portion of
the bill which is sought to be corrected has been called to the
attention of counsel presenting the same, before the cause was
argued and submitted, by being set forth in the brief of the ad-
verse party.

3. **Principal and Surety**: RELEASE OF SURETY.   One who is not a
party to a contract, by the terms of which the maturity of cer-
tain notes, which he afterwards signed, should be accelerated upon
the nonpayment of any one of them within four months after
due, cannot assert that he is released from his obligation upon
the notes merely upon this account, since the contract in no wise
affected his liability upon the notes, and he was only bound to
pay at the dates specified therein.

4. **Bills and Notes**: DEFENSES.   In the hands of any holder other
than a holder in due course, a negotiable instrument is subject to
the same defenses as if it were nonnegotiable.   Rev. St. 1913, sec.
5376.

5. ———: "HOLDER IN DUE COURSE."   A payee who takes a negotiable
instrument with knowledge that one of the signers is only sign-
ing as a surety, and who agrees that certain collateral pledged
to secure the note shall first be applied before the surety shall
be liable, is not a "holder in due course" as respects such agree-
ment with the surety.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE.   *Reversed, with directions.*

*R. C. Roper* and *S. S. Bishop,* for appellants.

*Fawcett & Mockett* and *C. M. Parker, contra.*

LETTON, J.

After this case had been argued and submitted to the commission and a memorandum opinion adopted by the court and handed down, plaintiffs filed a motion asking to withdraw the bill of exceptions for correction as to the testimony of Hansen with regard to a conversation with Hatfield. This was overruled, for the reason that it is the duty of one, who tenders a bill of exceptions to the adverse party, to present the evidence as he seeks to have it established. The responsibility is upon him to detect errors or mistakes in transcribing the reporter's notes. Before the days of official court reporters, the only method of obtaining a review was for each party to preserve the evidence and his exceptions, and, after submission to the adverse party, have the court settle them, and make the bill a part of the record. This responsibility still rests on the appealing party. When he presents his bill to the adverse party and the court, he vouches for its correctness, and, when the court makes it a part of the record, it imports verity, and can only be corrected by being withdrawn and corrected in the court from which it comes. Such a motion comes too late after the case has been decided. Otherwise, a reviewing court might spend time and labor upon a record, such as in this case, and, after it was decided, be compelled to review the whole case again.

Moreover, the brief of the appellee, Hansen, sets out at length, on page 13 thereof, the entire conversation as testified to by Mr. Hansen, so that, before the case was submitted and before a reply brief was filed, plaintiffs had full notice of the contention of the defendants in this regard. This, of itself, would have been sufficient reason to overrule the motion.

Coming, now, to the consideration of the case: Hatfield & Wagner, doing business as a partnership, were the owners of a stock of general merchandise, which they agreed to sell to Jakway & Parker for $15,500.

Jakway & Parker were to pay for the same in part by giving 12 promissory notes of $1,000 each, and one note of $500. The notes were to become due at intervals of six months, and were to be secured by collateral. A note for $4,000 to be signed by W. P. Parker, C. M. Parker and Niels P. Hansen was also to be given. The contract of sale, among other provisions, specified: ''In the event that any of said notes shall remain unpaid for a period of four months after the same become due, the remainder of said notes shall become due and payable at the option of the first parties.''

Hansen had no interest in the transaction. He was requested by Jakway & Parker to sign the $4,000 note mentioned in the contract, but refused. He finally agreed to sign the first four of the series of $1,000 notes. Hatfield & Wagner refused to accept notes so signed, but agreed to take the first, third, fifth and seventh with his signature. These he signed, the collateral and notes were delivered, and the stock of goods changed hands. Hansen, at the time this was done, had no knowledge of the provision of the contract whereby the notes were all to become due as soon as one of them was four months past due.

Default was made in the payment of several of the notes. Before the last of the four notes which Hansen signed was due, this action in equity was brought to wind up the business, to liquidate its affairs, and collect and apply on the notes all collateral and other securities. Plaintiffs had applied the proceeds of the collateral upon notes not signed by Hansen. A decree was rendered releasing Hansen from liability. From this judgment, the executrix of Hatfield, who had died in the interim, and Wagner appealed.

The first defense made by Hansen is that, by the concealment of the clause in the contract whereby the maturity of the notes was to be accelerated on the failure to pay any of them within four months after

102 Neb.—53

maturity, he was released from his obligation. We cannot see why this result should follow. He was not a party to the contract, and could not be held liable upon any of the notes which he signed until after the date upon which they fell due according to their face. He was not affected by this provision. It makes no change in his relation to the paper; therefore he cannot contend that the holders of the note were estopped by it.

In his second defense he pleads, in his amended answer, that he signed the notes as surety, with the agreement that all the property and securities of every kind given to the plaintiffs should be applied on the notes in the order in which they came due. He alleges that, contrary to this agreement, and contrary to law, the plaintiffs have failed to make such application, and are now holding the money derived from the securities, and he prays that all the collateral securities and all other property given to secure the payment of the notes be reduced to cash and applied to the payment of the notes, in the order in which they became due, commencing with No. 1, and for such other and further relief as may be just and equitable.

The plaintiffs maintain that there never was any agreement between Hatfield, Wagner and Hansen as to the application of the proceeds of the securities. Mr. Hansen testified that, in a conversation between Jakway, Hatfield and himself, it was stated by Hatfield that the "notes would be paid long before maturity, owing to the sufficiency of the security, and applied as they came due," evidently meaning that the proceeds would be applied as the notes came due. This testimony was objected to as incompetent under the statute, since plaintiff was the representative of a deceased person. This objection was not good. Plaintiff Wagner was still alive, and, as one of the partners, was engaged in winding up the business.

Furthermore, the circumstances seem to corroborate Hansen. The objections he made to signing the $4,000 note, viz., that this would leave him liable after all the securities had been exhausted and applied upon the other notes, in all probability was communicated to Hatfield & Wagner by Jakway, since they recognized its force by consenting to the change in the contract whereby he signed the early maturing notes in the series.

It is contended that under sections 5344 and 5347, Rev. St. 1913, Hansen is unconditionally liable as a maker upon the notes, because he was an "accommodation party," and plaintiffs are "holders in due course." The terms "holder," "holder for value," and "holder in due course" are respectively defined in sections 5507, 5344, and 5370, Rev. St. 1913. By section 5507, "holder" means the "payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." Under these definitions, we are of the opinion that the plaintiff partnership was a "holder" of the Hansen note, but not a "holder in due course," and that section 5376 applies, which, so far as applicable, is as follows: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable." Since the payees were parties to and had notice of the collateral agreement as to the application of the proceeds of the collateral, and the note had not been negotiated, it was subject to the same defenses as if nonnegotiable.

This is a trial *de novo*. From a survey of all the evidence, we are convinced that the defense is sustained by the evidence. The district court should have ascertained the proceeds from all the securities and property pledged, applied them upon the series of notes in the order in which they became due, and adjudged Hansen to pay whatever balance remained unpaid on the notes he signed.

The judgment of the district court releasing Hansen absolutely is reversed, and the cause remanded, with directions to proceed as above.

REVERSED.

CORNISH and ALDRICH, JJ., not sitting.