BERNARD W. HIGGINS, ADMR. *v.* CHARLES T. METZGER.

January Term, 1928.

Present: WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed October 3, 1928.

*Max L. Powell* and *Walter S. Fenton* for the defendant.

*Jones & Jones* for the plaintiff.

POWERS, J. The defendant, with Paul Higgins, the plaintiff's intestate, left Rock Island, P. Q., for Newport, Vt., about ten o'clock on the night of October 12, 1926, in a Buick touring car which the defendant was driving. The foot brake on this car had given out, as they both knew, but the emergency brake was working. The car was going fast, but just how fast, as we shall see, was left uncertain by the evidence. Whatever the speed of the car may have been, Higgins sat at the defendant's side and made no protest regarding it. The trip into Canada had been made by a road running straight past the house of Commissioner S. B. Bates, north and south. On the return trip, when he approached the Bates place, the defendant discovered a road turning to his right marked ''Newport'' with a luminous sign and other signs directing traffic that way. He started to turn this corner, but discovering that he came by the road dead ahead of him, he tried to turn back into that road. A tree and an electric light pole were in his way, and in trying to go between them the forward wheel of the car hit a stump that he had not seen. The shock threw him forward onto the steering wheel, broke the windshield, wrenched the control of the car from him and before he regained the control, Higgins was thrown out and killed. This action is brought for the benefit of the next of kin—two small children.

At the close of the evidence, the defendant moved for a verdict on the ground that the plaintiff had failed to show or to give evidence fairly and reasonably tending to show that the intestate was free from contributory negligence. This motion was overruled and the defendant excepted.

The negligence of the defendant is not here questioned, but the claim that this can be imputed to the intestate cannot be sustained. The latter was a guest in the car. A self-invited guest, to be sure, but that fact did not affect his standing. *Robinson* v. *Leonard,* 100 Vt. 1, 9, 134 Atl. 706. The trip to Rock Island

was the defendant's, who went to call upon a classmate. Higgins went by his leave. No joint enterprise was made of it, and the defendant was in sole control of the car. *McAndrews* v. *Leonard,* 99 Vt. 512, 524, 134 Atl. 710, 715; *Landry* v. *Hubert,* 100 Vt. 268, 274, 137 Atl. 97, 100. In the circumstances shown, the question of Higgins' negligence must be determined by what he did or omitted to do, without regard to the defendant's lack of care. *McAndrews* v. *Leonard, supra; Ronan* v. *Turnbull Co.,* 99 Vt. 280, 293, 131 Atl. 788. This question turns largely, if not wholly, on the question of speed.

Speaking with reference to their relation to the question of negligence in the handling of motor vehicles, excessive speed and unlawful speed are not necessarily the same thing. Speed may, in circumstances, be excessive though lawful. Thus, a speed of eight miles an hour, though lawful, may be dangerous. *Adams* v. *Averill,* 87 Vt. 230, 88 Atl. 738; *Gates* v. *Crane Co.,* 107 Conn. 201, 139 Atl. 782, 784; *Dervin* v. *Frenier,* 91 Vt. 398, 401, 100 Atl. 760. On the other hand, a speed in excess of the statutory limit, though unlawful, may be safe. *Oates* v. *Union R. R. Co.,* 27 R. I. 499, 503, 63 Atl. 675, 677; *Lady* v. *Douglass,* 105 Neb. 489, 181 N. W. 173, 174. See, also, *McAndrews* v. *Leonard,* 99 Vt. 512, 134 Atl. 710. That is to say, the one may warrant an inference of negligence, the other, of due care. It all depends on the circumstances. *Landry* v. *Hubert,* 100 Vt. 268, 273, 137 Atl. 97, 99.

When the defendant reported this accident to the motor vehicle bureau, he gave the speed of the car as 20 miles per hour. As a witness at the trial below, he testified that upon reflection, he judged that his speed was from 30 to 35 miles per hour. A witness who was in a position to observe the car and estimate its speed testified that it was going from 40 to 50 miles an hour. It must be admitted that there is much in the transcript to indicate that the speed of this car was excessive and negligent. But while much of the evidence was that way, it was not all that way. The testimony of the defendant is to be regarded. The scene of this accident was an incorporated village, where any speed in excess of 15 miles an hour was, by statute, *prima facie* evidence of negligence. But as we have seen, the violation of the statute was not negligence as a matter of law. Reading the evidence in the light most favorable to the plaintiff, as we must, it would be possible for the jury reason-

ably to find that this car was moving at a rate of speed between 30 and 35 miles an hour—even if the speed named in the defendant's report is ignored. This was less than the speed testified to in *McAndrews* v. *Leonard,* 99 Vt. 512, 134 Atl. 710, in which case we held that the question of speed and negligence were for the jury. "The question of what is or what is not," says the court in *Wingert* v. *Cohill,* 136 Md. 399, 403, 110 Atl. 857, 859, "a speed that a court will declare negligent as a matter of law varies, and must vary very largely with the circumstances of each particular case. Certain it is that the courts have not and will not declare as matter of law that the operation of a machine in the open country, upon a public highway, at a speed of 25 miles an hour, is negligence *per se,* where the view of one operating the machine is unobstructed, and the road of reasonable width for two vehicles to meet or pass one another, and the condition of the roadway good." In *Wills* v. *Anchor Cartage & Storage Co.* (Ohio App.), 159 N. E. 124, 126, the court says: "We have no doubt that Moley was driving faster than 15 miles an hour. We have no doubt he was driving 40 or 45 miles an hour, but what of it? Here was a straight road, at midnight, when the traffic has a right to expect the road to be free, and driving at a high rate of speed on a road such as this would not of itself be negligence, and the travelers had a right to expect the road to be kept open." In *Burke* v. *Cook,* 246 Mass. 518, 522, 141 N. E. 585, 587, it is said that: "A speed of 35 miles an hour, while *prima facie* evidence of a rate higher than is reasonable and proper, if continued for the distance of a quarter of a mile, was not conclusive even of negligence." And in *Gourley* v. *Jackson,* 116 Okl. 30, 243 Pac. 243, 247, it is held that a speed of 25 miles an hour outside a city is not negligence *per se.*

So far as actionable negligence is concerned, the circumstances shown by the record before us would justify driving a car at a speed substantially higher than the limit fixed by the statute—at least a jury might reasonably say so. It was in the night, the road was smooth and straight; it was wide and level, or practically so; it was entirely free from traffic. We cannot say that 35 miles an hour in such circumstances is of itself negligence. Then, too, a speed that would be dangerous to other users of the highway might not be so as to the occupants of the car.

Much less can we say that as matter of law Higgins' failure to protest was negligence. His duty was not co-extensive with that of the driver. The statute referred to specifies the driver, not the guest. The latter is not held to the same degree of watchfulness to keep down the speed, as the driver is. *McAndrews* v. *Leonard,* 99 Vt. 512, 525, 134 Atl. 710, 716. To be sure, the guest in that case was on the back seat, but the rule extends to one on the front seat, as well. The law fixes no specified rate of speed at which the guest must register his protest or be held guilty of contributory negligence as matter of law. Then, again, a guest who is ignorant of the speed and the perils incident thereto cannot be held to the same responsibility as one of full knowledge of such things. It is shown that Higgins knew something about automobiles, but he may have been as bad a judge of speed as the defendant apparently was when he reported the accident. It does not appear that the car was equipped with a speedometer, and if Higgins did not know the speed of the car, his silence could not make him negligent as matter of law. Surely, he was not bound to anticipate the defendant's attempt to make the turn at the Bates corner and then to get back into the straight road again. It must be remembered that under the motion we deal with the tendency of the evidence, and not its weight (*McAndrews* v. *Leonard,* 99 Vt. 512, 523, 134 Atl. 710), and we hold that the question of Higgins' negligence was for the jury and that the defendant's motion for a verdict was properly overruled. *Holland* v. *Yellow Cab Co.,* 144 Minn. 475, 175 N. W. 536, 537; *Dedman* v. *Dedman,* 155 Tenn. 241, 291 S. W. 449, 451; *Wills* v. *Anchor Cartage & Storage Co., supra.*

The court charged the jury that the rule which defined the duty to exercise care with reference to the operation of the car was, in terms, the same whether applied to the defendant or the intestate, but was not the same in its practical application to them. To this instruction the defendant excepted on the ground that "there is no difference whatever in the standard of care between the plaintiff (intestate) and defendant, or do the requirements of the rule at any time vary." The defendant now says that the court having complied with his request to charge as to contributory negligence, gave confusing and conflicting instructions on that subject. But that was not the ground of the exception. It is true that after a supplemental

charge had been given, the defendant excepted "in so far as that conflicts" with certain of the defendant's requests which had been complied with. But he did not point out wherein the supplemental charge conflicted with those requests, and he gave the court no opportunity to set the matter right if error had been committed. So the exception was not sufficiently specific to be availing. *Cross* v. *Passumpsic Fibre Leather Co.*, 90 Vt. 397, 410, 98 Atl. 1010; *Holbrook* v. *Quinlan & Co.*, 84 Vt. 411, 428, 80 Atl. 339.

The court further charged the jury that the plaintiff had the burden of showing that the intestate was free from contributory negligence; but that this did not require evidence distinctly directed to that negative proposition; that any evidence that tended to show that Higgins' death was due solely to the defendant's negligence tended to show freedom from negligence on the part of Higgins; that it was a question to be inferred from the attending circumstances. To all this the defendant excepted on the ground that "the plaintiff does have to introduce evidence having some tendency to negative or rather to show the plaintiff free from contributory negligence."

 ██ The instructions were in harmony with the law of our cases. The burden of proof is on the plaintiff; but direct and affirmative evidence of due care on his part is not required by the law. *Duggan* v. *Heaphy*, 85 Vt. 515, 531, 83 Atl. 726; *Ryder* v. *Last Block Co.*, 91 Vt. 158, 167, 99 Atl. 733; *Bombard* v. *Newton*, 94 Vt. 354, 357, 111 Atl. 510, 11 A. L. R. 1402. It is enough to carry the question to the jury to give evidence of such facts and circumstances as warrant an inference of due care on the plaintiff's part. *Cross* v. *Fibre Leather Co.*, 90 Vt. 397, 409, 98 Atl. 1010; *Wellman* v. *Wales*, 97 Vt. 245, 255, 122 Atl. 659. But the defendant seems to think that *Sharby* v. *Fletcher*, 98 Vt. 273, 278, 127 Atl. 300, is out of line with these cases. His position is unwarranted. What we said in that case was that "any evidence that tended to show that plaintiff's injuries were due solely to the alleged defects necessarily tended to show freedom from such negligence on the part of the driver." This is the language used by the court below. It expresses a self-evident truth. The statement that one thing is the sole cause of an accident necessarily excludes all other causes. If this accident was due solely to the defendant's negligence it could not have been due partly to Higgins' negligence. See *Bovee* v.

*Danville,* 53 Vt. 183, 189; *Winifred Bros.* v. *Rutland R. R. Co.,* 71 Vt. 48, 50, 42 Atl. 980; *Benedict* v. *Union Agricultural Society,* 74 Vt. 91, 103, 52 Atl. 110. The language of the Sharby Case was specifically applied to the case in hand and the instruction was that, if found, Higgins' freedom from contributory negligence was to be inferred from the circumstances shown, and it was left to the jury to say whether or not the circumstances warranted that inference. There is nothing in the Sharby Case that qualifies or limits the rules heretofore recognized by this Court. The exception under discussion is not sustained.

 After verdict and before judgment the defendant filed a motion to set aside the verdict and excepted when it was overruled. The motion was predicated upon several grounds, of which the only one here relied upon is that the verdict was too large, in that the jury failed to reduce the amount to be awarded to its present worth as required by law and instructed by the court. The exceptions show that during the closing argument for the plaintiff, counsel produced and argued from a prepared statement of the pecuniary benefits which the evidence tended to show the minor children had received from the decedent. It was claimed, and not here denied, that the evidence showed that this would be from 5 to 8 dollars per week each; and that the daughter Mary was 5 years old at the time of the accident and the son Bernard was 1 year old at that time. So the statement computed at 5 dollars a week showed Mary's gross loss $3,380 for 13 years before her majority and Bernard's for 20 years at $5,200. It also gave the results figured at 6, 7, and 8 dollars per week. At the last named rate, it made Mary's gross loss $5,408 and Bernard's $8,320—a total of $13,728. This was the exact amount of the verdict. The significance of this result is too apparent to be ignored. Correspondence of figures is frequently, though not always, recognized as evidence of identity. *American Surety Co.* v. *Gaskel's Admr.,* 85 Vt. 358, 362, 82 Atl. 218; *Story's Admr.* v. *Hall,* 86 Vt. 31, 34, 83 Atl. 653, 40 L. R. A. (N. S.) 1136, Ann. Cas. 1915B, 1187. In the circumstances, we think this correspondence between the figures of the claim and the figures makes it "very apparent"—as it was in *Crampton* v. *Valido Marble Co.,* 60 Vt. 291, 303, 50 Atl. 153, 1 L. R. A. 120—just what this jury did. It awarded the largest sum claimed by the statement without reducing it to

its present worth. Therefore, the court below, upon proper application, should have set aside the verdict or ordered a remittitur. Failing this, we would rectify the error, but at the plaintiff's expense. *Crampton* v. *Valido Marble Co., supra; Giffin* v. *Barr,* 60 Vt. 599, 604, 15 Atl. 190; *Tarbell* v. *Tarbell,* 60 Vt. 486, 494, 15 Atl. 104. But was proper application made below? We think not.

It is a familiar rule of this Court that the excepting party must here produce a record that makes it appear that harmful error was committed below. The risk of failure is his. *St. Albans Granite Co.* v. *Elwell,* 88 Vt. 479, 483, 92 Atl. 974; *Wood* v. *James,* 93 Vt. 36, 43, 106 Atl. 566. Unless the exceptions show that the question argued was raised below it will not be considered by this Court. *Parker* v. *McKannon Bros. & Co.,* 76 Vt. 96, 103, 56 Atl. 536. Not only that, but it must here appear that the exception in question was sufficiently specific to apprise the court of the real point of it. *Kimball* v. *New York Life Ins. Co.,* 98 Vt. 192, 207, 126 Atl. 553; *Woodhouse* v. *Woodhouse,* 99 Vt. 91, 148, 130 Atl. 758. A motion of the character of the one in hand, coming as it does at the end of a trial, especially requires the application of the rule. The grounds of it must be stated with such certainty that the trial court can understandingly pass upon it. *State* v. *Donaluzzi,* 94 Vt. 142, 148, 109 Atl. 57. The record before us does not show that the point here made was called to the attention of the court below. It shows that the defendant claimed that the verdict was contrary to the instructions of the court and was excessive. But it fails to show that this claim was predicated upon the failure of the jury to reduce the sum to be awarded to its then present worth. For want of an exception sufficiently specific the point argued is not available.

*Judgment affirmed.*

### On Motion for Rehearing.

When the foregoing opinion was handed down, at the defendant's request, the entry order was held and leave was granted to file a motion for rehearing and an amended bill of exceptions tendered therewith.

It is said in support of the motion that we wrongfully precluded the defendant from the benefit of a substantial error

committed below: (1) By turning the point on a shortage in the record concerning which the parties did not disagree, and to which the defendant's attention was not called by opposing counsel or the Court at argument; (2) by not construing the bill as covering the omission referred to in the opinion; (3) by overlooking the fact that the transcript was made a part of the bill by reference, and that, fairly construed, it shows that counsel below relied upon the point briefed; (4) by holding that the defendant should not have the benefit of the error committed, notwithstanding the condition of the record.

1. It is no part of the duty of counsel to point out to his opponent defects in the record, and his failure to do so here is of no consequence—except, possibly, upon the question of the exercise of our discretion hereinafter referred to. As said in the opinion, the excepting party carries the responsibility of presenting here a record that affirmatively shows error. He, alone, carries the risk of mistakes and omissions therein. He cannot shift this responsibility onto opposing counsel or the court, either here or below. If he fails by reason of the insufficiency of the record here, that result is chargeable to his own inattention. We affirm a judgment whenever this can legally be done, whether the ground on which we put our decision is urged by counsel or not; but we do not search for grounds on which to predicate error. With us, the record imports absolute verity, and anything not shown by it is out of the case in this Court.

2. True it is that the transcript is made a part of the bill, and it is urged that it shows that the defendant relied below upon the failure of the jury to reduce its award to its present worth by "the statement in the record respecting the tenor and effect of the plaintiff's closing argument, the copy of the computation referred to, and grounds 5 and 6 of the motion to set aside the verdict." The transcript, however, only shows what was said at the trial by counsel and court relative to present worth. This was all before verdict. There was no disagreement about it. The charge covered it. But the transcript makes no reference whatever to what was said or done after the verdict was rendered. If it showed that the motion to set aside the verdict covered the point under discussion, we would be in error in denying the defendant the benefit of it. But it does not. The original motion, being a part of the files, is before us,

though not referred to in the bill. *Frost* v. *Bates*, 16 Vt. 145, 146; *Wheelock* v. *Sears*, 19 Vt. 559, 563. But it, too, is in the general language of the exceptions, and does not show that it was predicated upon the failure of the jury to reduce its award to its present worth. We are specially referred to grounds 5 and 6 of the motion. But all that these assert is: '' (5) That the verdict is contrary to the instructions of the court''; and '' (6) that upon the evidence in said cause, under the instructions of the court, there is no basis for the verdict returned.'' Wherein the verdict was contrary to the instructions, or wherein there was a shortage of evidence is not specified. The trial court was entitled to know; it was the duty of complaining counsel to point out the defect relied upon. Moreover, he must present here a record affirmatively showing that he did point out the very defect here relied upon.

Our attention is called to *French* v. *Wheldon*, 91 Vt. 64, 99 Atl. 232, and *Whitman* v. *Dailey*, 95 Vt. 454, 115 Atl. 559, wherein similar general grounds were set out as bases for motions to set aside verdicts, and were passed upon by this Court. It is enough to say of those cases that the lack of specific grounds for the motions was not noticed or considered; and that they afford no precedent for disregarding or disposing of the omission here. See *In re Bean's Will*, 85 Vt. 452, 82 Atl. 734, wherein the subject of general exceptions to a charge were considered.

3. The third ground of the motion is nothing more than a restatement in different terms of the ground just considered, and does not require separate treatment.

4. In denying the defendant the benefit of the error, we followed the unquestioned rule of this Court. Error is never presumed. It must be made to appear. The construction of a record on review is always against the excepting party. As we have already said if through inadvertence or inattention that party presents here an imperfect or erroneous bill, he must suffer the consequences. We can not overturn established rules to save him.

This brings us to the most important question involved in this application: Shall we grant a rehearing on the amended bill? It is nowhere denied that a record may, on seasonable application, be so amended as to speak the truth. Courts differ, however, in their views as to what applications are to

be deemed seasonable. In the interests of public policy and a reasonably prompt disposition of cases in court, there must be set a time limit within which application for such correction shall be made. Otherwise, appellate courts would be swamped with applications of this kind and the final results of many cases would be much delayed. We said, in effect, in *Castonguay* v. *Grand Trunk Ry. Co.*, 91 Vt. 371, 374, 100 Atl. 908, that the presiding judge could amend the bill at any time before the case was submitted to us. We did not say, and do not now say that the submission of the case foreclosed the excepting party— though some courts say that amendments will not be permitted thereafter. *Pittsburgh Gas & Coke Co.* v. *Goff-Kirby Coal Co.*, 81 C. C. A. 76, 151 Fed. 466. We do not doubt that in a proper case we could, in the exercise of a sound discretion, grant a re-hearing on a bill corrected by remission to the trial court or otherwise—even after an opinion predicated on the original bill had been handed down. We quite agree, however, with those courts that hold that it is only in very special and exceptional cases that a rehearing will be granted after a decision has been announced in the appellate court, to enable the excepting party to supply defects in the record. Such a holding was made in *Ricks* v. *Bergsvendsen*, 8 N. D. 578, 80 N. W. 768, where the situation was much like the one here. That case was approved and followed in *Garbush* v. *Firey*, 33 N. D. 154, 156 N. W. 537, 539, and in *Black Hills Brewing Co.* v. *Middlewest Fire Ins. Co.*, 34 S. D. 262, 141 N. W. 358. To the same effect are *Huntington* v. *Cline* (Ind. App.), 97 N. E. 365; *State, ex rel.* v. *Ludwig*, 146 Wis. 385, 132 N. W. 130; *Board, etc., of Marion Co.* v. *Center Tp., etc.*, 105 Ind. 422, 7 N. E. 189; *Smith* v. *Gustin*, 169 Ind. 42, 81 N. E. 722; *Hatfield* v. *Jakway*, 102 Neb. 831, 170 N. W. 181; *Hansen* v. *De Vita*, 77 N. J. Law, 267, 72 Atl. 60; *U. S.* v. *Adams*, 9 Wall. 554, 19 L. ed. 584. In the case last cited, the defect was known to counsel in time to have the correction made before hearing. But relying on its immateriality counsel did not apply until after an adverse decision was announced. Therein the case differs from this case, and is like *McAllister* v. *Benjamin*, 96 Vt. 475, 121 Atl. 263, where the excepting party was appraised of the claim made by his adversary that the transcript was not a part of the record. In both these cases relief was denied. The fact of knowledge of the defect is a circumstance affecting the exercise of our discretion in grant-

ing or withholding the opportunity sought. In the case before us, the defendant was not informed of the defect until our decision was announced. But his was the fault, and therefore his ignorance does not make his case ''very special'' or ''very exceptional.''

*Motion overruled. Let full entry be made.*